# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBBIE EMERY BURKE, as Special Administratrix of the Estate of Billy Woods, deceased,<br><br>    *Plaintiff*,<br><br>v.<br><br>1. MUSKOGEE COUNTY COUNCIL OF YOUTH SERVICES ("MCCOYS"), a domestic not-for-profit corporation,<br>2. MUSKOGEE COUNTY BOARD OF COUNTY COMMISSIONERS ("Board"),<br>3. JERROD LANG,<br>4. BRANDON MILLER,<br>5. ANGELA MILLER, and<br>6. MARIETTA WINKLE,<br><br>    *Defendants*, | Case No. CIV-18-108-RAW |

## ORDER AND OPINION[1]

This action arises from the suicide of 16-year old Billy Woods at the Muskogee County Regional Juvenile Detention Center ("MJDC"). Billy died alone in his room at the MJDC after hanging himself with a bed sheet. After this court's ruling on motions to dismiss, the parties' joint stipulations of dismissal with prejudice, and the recent settlement between other parties,[2] the following 42 U.S.C. § 1983 claims remain: failure to train, failure to supervise, and inadequate staffing against the Board pursuant to *Monell v. Department of Social Servs.*, 436

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

[2] See Docket Nos. 51, 94, 132, and 209. Additionally, the court has been informed by the United States Magistrate Judge that Plaintiff has reached settlement with the MCCOYS and the individual defendants. The court, therefore, deems the motions filed by those defendants moot.

U.S. 658 (1978). Plaintiff also brought a claim for cruel and unusual punishment under Article II, § 9 of the Oklahoma Constitution against the Board. Now before the court is the motion for summary judgement filed by the Board [Docket No. 158].

I. **Standard of Review**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the Complaint. *Id.*

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial, the substance of the evidence must be admissible.

2

## II.  Undisputed Material Facts

The Board owns the MJDC, a ten-bed facility that houses juveniles until their cases are adjudicated.  Docket Nos 158, at 8-9; 187, at 8; and 207, at 2.  The Board contracted with the MCCOYS to operate and staff the MJDC.  Docket Nos 158, at 9-10; 187, at 8; and 207, at 2.  Of course, the existence of the subcontract did not relieve the Board of its oversight responsibility.  10A OKLA. STAT. § 10A-2-3-103(C).  The Board reviewed and approved MCCOYS' policies and policy changes.  Docket No. 187-5, at 2.

Billy Woods arrived at the MJDC around 2:30 p.m. on December 14, 2016.  Docket Nos. 158, at 12-13; 187, at 9-11; and 207, at 2.  When Billy arrived, Anthony Cornwell, a shift supervisor initiated the intake process, but did not complete it because his shift ended at 3:00 p.m.  *Id*.  Cornwell wrote in his "Daily Note" that Billy appeared to have mental health issues.  *Id*.  Jarrod Lang was the shift supervisor who arrived at 3:00 p.m.  *Id*.  Later that day, possibly even after 7:00 p.m., Lang completed the intake process.  *Id*.

During the intake process, Billy was given a suicide risk assessment.  *Id*.  Billy told Lang that he had attempted suicide seven or eight times beginning when he was eight or nine years old.  *Id*.  He told Lang he had attempted to hang himself, but that most recently, he attempted suicide by gun.  *Id*.   Lang asked Billy, "how likely do you think you would be to hurt yourself at this time," and Billy replied that he "definitely would not."  *Id*.  Despite Billy's history and because of Billy's answer to that one question, Lang did not place Billy on suicide watch.  *Id*.  Lang did not inform Brandon Miller, Angela Miller or Marietta Winkle about Billy's history with suicide.  *Id*.

Under the MCCOYS' suicide prevention policy, if a resident is placed on suicide watch, he or she must be visually observed every five (5) minutes, bed linens will be removed, and

3

clothing will be removed if the juvenile attempts to use it cause bodily harm. *Id*. While the MCCOYS' written policy states that *every* juvenile be visually observed at least every fifteen (15) minutes, there is no evidence that anyone at the MJDC checked on Billy between 3:00 and 7:00 p.m. *Id*. Lang did not review Cornell's "Daily Note" from the previous shift. *Id*.

On December 15, 2016, Billy slept in his room most of the day until he was sent to court around 2:45 p.m. Docket Nos. 158, at 13-14; 187, at 13-15; and 207, at 2-3. On December 15, 2016, Lang, Brandon Miller, Angela Miller, and Marietta Winkel were working the 3:00 p.m. to 11:00 p.m. shift at the MJDC. *Id*. Angela Miller was on duty in the control room, while the others were on the floor. *Id*. When Billy returned from court, he was locked in his room from around 3:55 p.m. until 5:30 p.m. when he came out to eat dinner. *Id*. Billy showered around 6:30 p.m. and went back to his room a few minutes later. *Id*. Winkle stated that Billy looked depressed when he was out of his room and that if she had been supervising, she would have had someone sit in Billy's room with him or at least check on him every five minutes. *Id*. Nevertheless, for the next two hours, no one checked on Billy. *Id*.

At 8:36 p.m. Lang opened the door to Billy's room and found him hanging from a bed sheet. Docket Nos. 158, at 15-17; 187, at 16-20; and 207, at 3-5. The MJDC staff did not cut him down, check his pulse, or check his breathing. *Id*. No one removed the bed sheet from Billy's neck. *Id*. They waited over 20 minutes to call 911. *Id*. After finding Billy, Lang went outside and "smoked a bunch of cigarettes." *Id*.

Lang falsified the 15-minute check log to indicate that the 15-minute checks had been done, when in fact, they were not. *Id*. The individual defendants knew of the 15-minute check policy and that it was against policy to falsify the 15-minute check log. *Id*. The 15-minute check policy was not followed or enforced. *Id*. The MCCOYS was on notice of this failure, yet

4

the MCCOYS and the Board did not correct it.  *Id*.  Had the 15-minute check policy been followed, Billy's suicide attempt likely would have been discovered and interrupted.  *Id*.

The individual defendants had CPR and First Aid training from the Red Cross.  *Id*.  They had also received some type of training on recognizing signs and symptoms of suicidal ideation and suicide assessment and prevention.  *Id*.

### III.     Federal Claims against the Board

Plaintiff brings § 1983 claims for failure to train, failure to supervise, and inadequate staffing against the Board.  The Board argues that it is entitled to summary judgment because Plaintiff cannot establish that a policy or custom of the MJDC caused the constitutional violations and cannot establish that the Board, through its deliberate conduct, was the moving force behind the alleged injury.  The Board then cites to several policies that likely would have saved Billy's life had they been followed.  The Board argues that it cannot be held liable for the wrongs of its employees.  As to staffing, the Board argues it required a minimum of two staff members at the MJDC, which was only a ten-bed facility.

While there may have been an adequate *number* of staff members at the MJDC on December 15, 2016, those staff must be adequately trained and supervised to do their jobs.  The Board argues that Plaintiff cannot establish there was deliberate indifference to a need for training and supervision.  More specifically, the Board argues that Plaintiff cannot establish that the Board knew of and disregarded the substantial risk of inadequate training and supervision of MCCOYS employees and that the inadequate training and supervision had a causal connection to the violation of Billy's constitutional rights.

The court disagrees. Plaintiff has presented ample evidence, and these are genuine issues of material fact for a jury. Whether the MJDC employees were adequately trained as to the MCCOYS policies and procedures are genuine issues of material of fact. Whether the MJDC employees were adequately trained as to CPR, First Aid,[3] and suicide prevention[4] are genuine issues of material fact. Whether the MJDC employees were properly supervised are genuine issues of material fact. Whether the Board subjectively or objectively knew of and disregarded any inadequacies are genuine issues of material fact.[5]

IV.     **Oklahoma Constitutional Claim against the Board**

Plaintiff brings a claim of cruel and unusual punishment under Article II, § 9 of the Oklahoma Constitution against the Board. In a case similar to the one now before the court, a United States Magistrate Judge in this District recently certified the following questions of state law to the Supreme Court of Oklahoma:

---

[3] Defendants in this case seem fine with relying on Lang's diagnosis of death from across the room when he opened Billy's door at 8:36 p.m. It is undisputed that Lang had no medical training. The court again notes that upon discovery of Billy in that condition, not one employee checked his breathing, checked his pulse, initiated CPR, removed the bed sheet from his neck, or even bothered to call 911 for over 20 minutes. The fact that *four* employees made such unimaginable choices in this situation seems to indicate an obvious lack of training, one so obvious, the Board should have been aware.

[4] The Board argues that Plaintiff cannot establish municipal liability by showing a lack of training on suicide prevention. According to the Board, if the MJDC staff did not realize that Billy was at risk of suicide, there was no underlying violation, so it cannot be held liable for failing to train the staff to recognize a risk of suicide. Conversely, the Board argues if the MJDC staff did realize that Billy was at risk of suicide or if it was objectively obvious, then any failure *obviously* could not have been caused by a lack of training. The court does not agree.

[5] The court notes its agreement with Plaintiff that these alleged deficiencies are obviously and closely related to Billy's injury.

1. May a county jail inmate maintain a claim for denial of medical care under Article II, §§ 7 & 9 of the Oklahoma Constitution notwithstanding any immunity for such a claim under the Oklahoma Governmental Tort Claims Act (hereinafter "GTCA")?

2. Is any such claim to be recognized retrospectively?[6]

In an Opinion issued on December 4, 2018, the Oklahoma Supreme Court declined to extend its ruling in *Bosh v. Cherokee Cnty. Governmental Bldg. Auth*. 305 P.3d 994 (Okla. 2013), and answered the first question in the negative. *Barrios v. Haskell Cnty. Pub. Facilities Auth., et al*., 432 P.3d 233, 235-41 (Okla. 2018). The Oklahoma Supreme Court pointed out that after its ruling in *Bosh*, the State legislature responded by amending the GTCA to include immunity for violations of the Oklahoma Constitution.

Plaintiff concedes that the Oklahoma Supreme Court's ruling bars the state claims against the Board. Summary judgment is granted as to the claim under the Oklahoma Constitution.

## V. Conclusion

The motion for summary judgment filed by the Board [Docket No. 158] is hereby GRANTED as to the state law claim and DENIED as to the federal claims.

As they have reached settlement with Plaintiff, the motions filed by the MCCOYS and the individual defendants [Docket Nos. 151, 152, 154, 168, 169, 170, 172, and 173] are hereby considered MOOT.

**IT IS SO ORDERED** this 17th day of May, 2019.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

[6] *See Barrios v. Haskell Cnty. Pub. Facilities Auth., et al*., CIV-17-325-SPS, Docket No. 54 and 59.