## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) ROBBIE EMERY BURKE, as Special Administratrix of the Estate of BILLY WOODS, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-108-RAW |
| | ) | |
| (1) MUSKOGEE COUNTY COUNCIL OF YOUTH SERVICES ("MCCOYS"), a Domestic Not-for-Profit Corporation, et al., | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT BOARD'S BRIEF REGARDING
### ITS OBJECTIONS TO CERTAIN DEPOSITION DESIGNATIONS

Pursuant to the Court's Order at Doc. No. 261, Defendant Board of County Commissioners of Muskogee County, Oklahoma ("Defendant" or "Defendant Board") submits the following Brief explaining its objections to certain deposition designations and the good-faith efforts it has made to resolve those objections with Plaintiff's counsel.

As this Court knows, this matter was originally set for trial on October 1, 2019. At that time, Dr. Richard Hough and Dr. Jeffrey Reames, Defendant's expert witnesses, were not available to testify live at trial. At that time, Plaintiff's counsel would not agree to present Billy Woods' ("Decedent") parents, Samantha Mahler ("Ms. Mahler") and Heath Woods ("Mr. Woods") as witnesses at trial, Defendant had no current address for Ms. Mahler, and it was, and still is, uncertain whether Mr. Woods lives within the Court's jurisdiction, the Board was and still is uncertain whether it can ensure Ms. Mahler and Mr. Woods will testify live at trial.

With the trial now set for the June 2, 2020 docket, it is believed that Defendant's experts (Dr. Reames and Dr. Hough) will be available to testify in-person and Defendant's counsel is obtaining (from Plaintiff's counsel) current contact and location information for Mr. Woods and

Ms. Mahler for purposes of subpoenaing them to ensure they testify live at trial. However, Defendant is not sure if either can be served or reside within the Court's jurisdiction. Therefore, in an abundance of caution, and should the trial have to be moved from June 2, 2020, or should any of these witnesses become unavailable for trial, Defendant Board maintains those portions of Mr. Woods, Ms. Mahler, Dr. Reames, and Dr. Hough's testimony it designated in Doc. 259 (except for the following, below exceptions).

Counsel for both parties have conferred concerning their objections to Ms. Mahler, Mr. Woods, Dr. Hough, and Dr. Reames' designated testimony in a good-faith effort to resolve those objections. Regarding Mr. Woods, Defendant Board had no objections to any designated portion of his deposition testimony, but in a good-faith effort to resolve Plaintiff's objections, agreed to withdraw the following testimony of Mr. Woods which the Board had previously designated: 10:9-15; 23:13-24:8; 33:14-15; 33:18; 34:2-8; 35:3-8; 63:18-64:2; 87:11-88:5; 90:5-7; 94:8-15; 95:8-23; and 109:16-21.

Similarly, Defendant Board had no objections to any designated portion of Ms. Mahler's deposition testimony, but in a good-faith effort to resolve Plaintiff's objections, agreed to withdraw the following testimony of Ms. Mahler which the Board had previously designated: 8:9-17; 8:23-9:5; 11:10-17; 12:3-13; 13:2-21; 24:12-18; 27:14-24; 46:19-47:1; 50:24-51:13; 54:9-11; 55:9-25; 60:20-62:2; 63:19-64:6; 64:24-65:18; 76:23-77:16; 88:12-14; 89:15-18; 136:13-19; and 193:10-194:4.

The parties also conferred regarding Dr. Hough and Dr. Reames' deposition designations and their various objections. In a good-faith effort to resolve those objections, Defendant Board has agreed to withdraw the following, previously-submitted objections to Dr. Hough's deposition testimony: hearsay (FRE 801-802) at 128:15-131:21 and hearsay (FRE 801-802) at 145:15-

149:19. Despite their good-faith effort to resolve them, the following objections to the designated testimony of Dr. Hough's were not resolved and are being maintained by the Board:

| Page & line | Objections & Basis (Dr. Hough) |
|---|---|
| 119:19-120:7 | **Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned nor did he provide testimony during direct examination about Decedent's uncle attempting suicide and treatment (or lack thereof) Decedent received after a previous suicide attempt.<br><br>**Relevance (FRE 401-402):** That Decedent did/did not receive treatment for a previous suicide attempt and Decedent's uncle having committed suicide is irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through Muskogee County Regional Juvenile Detention Center's ("RJDC") policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.<br><br>**Wasting time (FRE 403):** Even if relevant, Decedent's uncle having previously committed suicide and that Decedent did not receive treatment for a past suicide attempt poses substantial risk that this information would waste the court and jury's time, considering the numerous witnesses and evidence it must hear and the very little probative value this purported evidence may offer.<br><br>**Hearsay (FRE 801-802):** Dr. Hough is testifying about statements Decedent made to Jerrod Lang ("Lang") contained within a suicide risk assessment form; this constitutes hearsay.<br><br>**Authenticity (FRE 901):** The suicide assessment has not been authenticated. |
| 125:1-125:13 | **Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned |

<table>
<tr><td></td><td>

about nor provided testimony during direct examination about his expertise in suicide risk assessment.

**Argumentative (FRE 611):** Counsel's statement that the witness did not answer the question was argumentative and harassing.

**Relevance (FRE 401-402):** Whether or not Dr. Hough is or is not an expert in suicide risk assessments is irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.

</td></tr>
<tr><td>

125:14-126:25

</td><td>

**Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned about nor provided testimony during direct examination about his expertise in suicide risk assessment.

**Asked/Answered (FRE 611):** After answering counsel's question about whether he was/considered himself an expert in suicide risk assessment (125:8-13), counsel asked Dr. Hough the same question two more times (125:14-16, 126:21-22).

**Mischaracterizes/misstates testimony (FRE 611, 403):** Dr. Hough did not "refus[e] to answer" counsel's multiple questions about whether Dr. Hough considered himself an expert in suicide risk assessment. Instead, he responded by explaining he has over forty years of experience, including in suicide assessment, but whether or not he is an expert on that matter is for the Court to decide.

**Relevance (FRE 401-402):** Whether or not Dr. Hough is or is not an expert in suicide risk assessments is irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.

</td></tr>
</table>

| 128:15-131:21 | **Relevance (FRE 401-402):** Cindy Perkins and Joe Washington's after-the-fact beliefs about whether or not Decedent should have been placed on suicide watch is irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC. |
| | **Wasting time, confusing the issues, and prejudicial (FRE 403):** Even if relevant, Ms. Perkin's and Mr. Washington's after-the-fact belief that Decedent should have been placed on suicide watch poses a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any probative value. |
| | **Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned about nor did he testify to Ms. Perkins or Mr. Washington's after-the-fact beliefs about whether Decedent should have been on suicide watch. |
| | **Mischaracterizes/misstates testimony and assumes facts not in evidence (FRE 611, 403):** This mischaracterizes/misstates both Mr. Washington and Ms. Perkin's deposition testimony. Also, Mr. Washington and Ms. Perkins have yet to testify at trial, so their trial testimony is unknown. And, neither party designated Mr. Washington's and/or Ms. Perkins' deposition testimony. |
| 135:2-135:17 | **Relevance (FRE 401-402):** Decedent was not on suicide watch, so whether or not he would have had access to bed linens if he had been on suicide watch is irrelevant whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, |

| | |
|---|---|
| | and/or through its supervision of RJDC. |
| | **Confuses the issues (FRE 403):** Even if relevant, its probative value is substantially outweighed by the danger that it will confuse the issues since Decedent was not placed on suicide watch. |
| | **Foundation and speculative (FRE 602):** Decedent was not placed on suicide watch so his access to bed linens if he had been on suicide watch lacks foundation and is purely speculative. |
| 135:18-136:19 | **Relevance (FRE 401-402):** Decedent was not on suicide watch, so whether or not a juvenile who was on suicide watch would have had access to bed linens is irrelevant. |
| | **Confuses the issues and wastes time (FRE 403):** Even if relevant, its probative value is substantially outweighed by the danger that it will confuse the jury and waste time since Decedent was not on suicide watch. |
| | **Foundation and speculative (FRE 602):** Decedent was not placed on suicide watch so whether juveniles on suicide watch had access to bed linens lacks foundation and is purely speculative. |
| | **Asked/Answered (FRE 611):** Dr. Hough had already been asked and already testified about RJDC policy concerning bed linens for juveniles on suicide watch. |
| | **Mischaracterizes/misstates testimony (FRE 611):** Dr. Hough testified as to RJDC's policy concerning bed linens for suicide-watch-juveniles and that RJDC policy permitted removing bed linens if a juvenile attempted to harm him-or-herself; Dr. Hough did not testify that bed linens are only removed if a juvenile on suicide watch tried to harm him/herself. |
| 138:1-140:4 | **Ruling on Defendant Board's MIL:** The Court has already ruled that the Office of |

| | |
|---|---|
| | Child Advocacy Report ("OCA") and its findings will not be discussed or submitted into evidence. (*See* Doc. 249; *see also* the Parties Proposed, Revised Pretrial Order, which was submitted to the Court on October 3, 2019). <br><br> **Relevance (FRE 401-402):** The OCA investigator's after-the-fact findings are irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC's policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC. <br><br> **Hearsay (FRE 801-802):** Dr. Hough's testimony discusses the OCA investigator's statements as contained in his report, which is hearsay. |
| 141:16-142:6 | **Foundation and speculative (FRE 602):** Dr. Hough has no personal knowledge of Lang, Miller, and Winkle's knowledge of five-minute checks at RJDC, so this lacks foundation and is speculative. <br><br> **Assumes facts not in evidence (FRE 611, 403):** Lang, Miller, and Winkle have not yet testified live at trial so their trial testimony is unknown. Also, their deposition testimony has not been designated by any party. |
| 143:8-144:9 | **Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned nor did he provide testimony during direct examination about Mr. Childs being Decedent's caseworker, Mr. Childs' testimony and/or whether Mr. Childs conducted a mental health or suicide assessment of Decedent <br><br> **Mischaracterizes/misstates testimony (FRE 611, 403):** Dr. Hough did not testify that Mr. Childs was Decedent's caseworker, as stated by counsel. <br><br> **Assumes facts not in evidence (FRE 611, 403):** Mr. Childs has not yet testified live at trial and so it is unknown what he his (trial) testimony may be. Also, his deposition |

| | |
|---|---|
| | testimony has not been designated by any party. And, there is no supporting evidence that Mr. Childs was Decedent's caseworker. |
| 145:15-149:19 | **Relevance (FRE 401-402):** Whether orientation paperwork submitted to the Office of Juvenile Affairs ("OJA") was falsified, whether Lang signed a form acknowledging he read the policies and procedures before reading them, whether Lang had time to sufficiently read the policies before he began working at RJDC, and whether Mr. Washington stopped doing performance evaluations is not relevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC. <br><br> **Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, that performance evaluations ceased, that Lang had to start working before reading RJDC's policies but was made to sign off that he did anyways, and that falsified paperwork was given to OJA during evaluations all pose a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any probative value. <br><br> **Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned nor did he provide testimony during direct examination about paperwork submitted to OJA being falsified, performance evaluations, or Lang's deposition testimony/claims about his ability to read RJDC's policies. <br><br> **Mischaracterizes/misstates testimony (FRE 611, 403):** Counsel's questions contain misstatements and mischaracterizations of Mr. Lang and Mr. Washington's deposition |

| | |
|---|---|
| | testimony.<br><br>**Assumes facts not in evidence (FRE 611, 403):** Mr. Washington and Mr. Lang have not yet testified live at trial and it is unknown what they may testify to. Also, their deposition testimony has not been designated by any party. |
| 150:17-151:24 | **Ruling on Defendant Board's MIL:** The Court has already ruled that the OCA Report and its findings will not be discussed or submitted into evidence. (*See* Doc. 249; *see also* the Parties Proposed, Revised Pretrial Order, which was submitted to the Court on October 3, 2019). This necessarily includes any related appeal by Lang.<br><br>**Relevance (FRE 401-402):** OCA's after-the-fact findings and any related appeal by Lang are not relevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** OCA's after-the-fact findings and that Lang appealed them, even if relevant, is outweighed by the substantial risk Defendant would be prejudiced and that this information would confuse the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed) and further waste time.<br><br>**Hearsay (FRE 801-802):** Dr. Hough's testimony discusses the OCA investigator's statements as contained in his report and Lang's appeal, which are hearsay. |
| 152:5-17 | **Ruling on Defendant Board's MIL:** The Court has already ruled that the OCA Report and its findings will not be discussed or submitted into evidence. (*See* Doc. 249; *see also* the Parties Proposed, Revised Pretrial Order, which was submitted to the Court on October 3, 2019). This necessarily includes any related appeal by Lang. |

| 153:22-154:8 | **Mischaracterizes/misstates testimony (FRE 611, 403):** Dr. Hough testified during direct that RJDC policy required that juveniles on suicide watch be checked every five minutes (33:7-16); he did not testify that it would be appropriate to conduct fifteen-minute checks of a juvenile on suicide watch. |
|---|---|
| 155:23-156:19 | **Relevance (FRE 401-402):** Decedent was not placed on suicide watch, so whether or not he would have been checked every five minutes if he had been is irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC. **Asked/answered (FRE 611):** Dr. Hough previously testified about which checks (five or fifteen-minute) were appropriate for a juvenile on suicide watch (33:7-16). **Argumentative (FRE 611, 403):** Counsel's statements concerning the question being "easy" or "yes-or-no" or that he "will take that as a no" are argumentative and harassing of the witness. |
| 159:14-160:17 | **Relevance (FRE 401-402):** Decedent was not placed on suicide watch, so whether or not the suicide watch policy is being followed/enforced is irrelevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC. **Wasting time, confuses the issues, and prejudicial (FRE 403):** If a jury believes that the suicide watch policy was "never" followed or enforced, then there is substantial risk this would prejudice Defendant, confuse from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further |

| | |
|---|---|
| | waste time. So, even if relevant, these substantial risks outweigh any probative value.<br><br>**Outside the scope of direct examination (FRE 611):** Dr. Hough was not questioned nor did he provide testimony during direct examination about whether or not the RJDC suicide watch policy was being followed/enforced.<br><br>**Assumes facts not in evidence (FRE 611, 403):** No "evidence" has been admitted showing that five-minute checks were never done at RJDC. |

After a good-faith effort between the parties to resolve them, the Board maintains following objections to the designated deposition testimony of Dr. Reames:

| Page & line | Objections & Basis (Dr. Reames) |
|---|---|
| 27:12-14 | **Mischaracterizes/misstates testimony (FRE 403):** "[E]very" supervisor did not testify either that Decedent "presented with suicidal ideation" or that Decedent should have been put on suicide watch. |
| 29:14-17 | **Mischaracterizes/misstates testimony (FRE 403):** There have not been "multiple" employees testifying that they falsified forms or that all staff responsible for Decedent falsified forms. |
| 35:17-40:2 | **Outside the scope of direct examination (FRE 611):** Dr. Reames was not questioned nor did he provide testimony during direct examination about the EMS report regarding a previous suicide attempt at RJDC and/or whether he had read such a Report/was provided it by defense counsel.<br><br>**Authentication (FRE 901):** The EMS report was not authenticated.<br><br>**Hearsay (FRE 801-802):** The testimony concerns statements within an EMS report, which is hearsay. |

11

| | |
|---|---|
| | **Relevance (FRE 401-402):** The past suicide attempt was successfully averted and that juvenile had less cyanosis on his face than Decedent, and so this is irrelevant as to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, that a juvenile had previously attempted suicide by hanging at RJDC poses a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and wasting time. So, even if relevant, these substantial risks outweigh any probative value. |
| 42:2-44:15 | **Outside the scope of direct examination (FRE 611):** Dr. Reames was not questioned nor did he provide testimony during direct examination about the EMS report regarding a previous suicide attempt at RJDC.<br><br>**Authentication (FRE 901):** The EMS report was not authenticated.<br><br>**Hearsay (FRE 802):** The testimony concerns a statements within an EMS report, which is hearsay.<br><br>**Relevance (FRE 401-402):** The past suicide attempt was successfully averted and that juvenile had less cyanosis on his face than Decedent, and so this is irrelevant as to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, that a juvenile had previously attempted suicide by hanging at RJDC pose a |

| | |
|---|---|
| | substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any probative value. |
| 51:21-53:19 | **Relevance (FRE 401-402):** Whether or not Dr. Reames requested from Plaintiff's counsel or sought a medical records authorization to receive more medical records on Decedent, and Decedent's medical records showing past treatment is irrelevant as to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC. <br><br> **Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, Decedent's medical records showing past treatment and whether or not Dr. Reames requested from Plaintiff's counsel or sought a medical records authorization to receive more medical records on Decedent pose a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any probative value. |
| 58:3-63:12 | **Outside the scope of direct examination (FRE 611):** Dr. Reames was not questioned nor did he provide testimony during direct examination about RDJC staff's handling and care of Decedent from the time he was brought to RJDC until his death. <br><br> **Relevance (FRE 401-402):** RJDC detention workers' actions after finding Decedent dead are irrelevant as to whether Defendant Board was deliberately indifferent to |

| | |
|---|---|
| | Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, RJDC detention workers' actions after finding Decedent dead pose a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any probative value. |
| 63:13-64:20 | **Authentication (FRE 901):** Lang's Report/Exhibit 20 was not authenticated.<br><br>**Hearsay (FRE 802):** The testimony concerns statements within Lang's Report/Exhibit 20, which is hearsay.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, Lang's description of Decedent's "lividity" and coloring pose a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any probative value. |
| 64:21-65:8 | **Authentication (FRE 901):** Miller's Report/Exhibit 23 was not authenticated.<br><br>**Hearsay (FRE 802):** The testimony concerns statements of Lang within Miller's Report/Exhibit 23, which is hearsay.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** Even if relevant, Lang's description (or lack thereof) to Miller of Decedent's "lividity" and coloring pose a substantial risk of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. So, even if relevant, these substantial risks outweigh any |

14

| | |
|---|---|
| | probative value. |
| 66:25-66:13 | **Mischaracterizes/misstates testimony (FRE 403):** Mr. Washington did not testify that he lied to Muskogee Police Department. |
| 66:14-69:14 | **Authentication (FRE 901):** Lang's Statement to Muskogee Police Department Report/Exhibit 32 was not authenticated.<br><br>**Hearsay (FRE 802):** The testimony concerns statements of Lang within his Statement to Muskogee Police Department Report/Exhibit 32, which is hearsay. |
| 70:3-71:10 | **Ruling on Defendant Board's MIL:** The so-called evidence of Lang making fun of Decedent comes from the OCA investigation, but the Court has already ruled that the OCA Report and its findings will not be discussed or submitted into evidence. (*See* Doc. 249; *see also* the Parties Proposed, Revised Pretrial Order, which was submitted to the Court on October 3, 2019).<br><br>**Relevance (FRE 401-402):** OCA's after-the-fact findings, including Lang making fun of Decedent, are not relevant to whether Defendant Board was deliberately indifferent to Decedent's constitutional rights through RJDC policies, procedures, and/or customs, RJDC staff's training, and/or through its supervision of RJDC.<br><br>**Wasting time, confuses the issues, and prejudicial (FRE 403):** OCA's after-the-fact findings, including that Lang made fun of Decedent, even if relevant, is outweighed by the substantial risks of prejudicing Defendant, confusing the jury from the issues at-hand (whether the Board was deliberately indifferent, as above-discussed), and further wasting time. |

Respectfully submitted,


s/ Taylor M. Riley
Andy A. Artus, OBA No. 16169
Taylor M. Riley, OBA No. 33291
Michael L. Carr, OBA No. 17805
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th, Second Floor
Oklahoma City, OK  73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
Email: aaa@czwlaw.com
          tmr@czwlaw.com
          mlc@czwlaw.com

*Attorneys for Defendant Board of*
*Commissioners of Muskogee County,*
*Oklahoma*


## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen, via electronic mail at: danielsmolen@ssrok.com
Robert M. Blakemore, via electronic mail at: bobblakemore@ssrok.com
Bryon D. Helm, via electronic mail at: bryonhelm@ssrok.com
701 South Cincinnati Avenue
Tulsa, OK 74119

-and-

Joel A. LaCourse, OBA No. 17082
Caleb Salmon
LaCourse Law, PLLC
715 S. Elgin Ave.
Tulsa, OK 74120
Telephone:     (918) 744-7100
Facsimile:      (918) 477-2299
Email:          Joel@lacourselaw.com

*Attorneys for Plaintiff*

16

Randall J.  Wood, OBA, #10531
Robert S. Lafferrandre, OBA No. 11897
Carson C. Smith, OBA No. 22303
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 N. Francis
Oklahoma City, OK 73106
Telephone:     (405) 235-1611
Facsimile:     (405) 235-2904
Email:          rwood@piercecouch.com
                    rlafferrandre@piercecouch.com
                    csmith@piercecouch.com

**Attorney for Defendant Muskogee County Council of Youth Services**

Jacqueline R. Zamarripa, CBA #304681
Richard N. Mann, OBA #11040
Assistant Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:     (405) 521-3921
Facsimile:     (405) 521-4518
Email:          Jackie.zamarripa@oag.ok.gov
                    Richard.mann@oag.ok.gov

**Attorneys for Oklahoma Juvenile Affairs and Steven Buck**

James L. Gibbs, II, OBA No. 15689
Seth D. Coldiron, OBA 20041
GOOLSBY, PROCTOR, HEFNER & GIBBS, PC
701 N. Broadway Ave., Suite 400
Oklahoma City, OK 73102-6006
Telephone:     (405) 524-2400
Facsimile:     (405) 525-6004
Email:          jgibbs@gphglaw.com
                    scoldiron@gphglaw.com

**Attorney for Defendants, Brandon Miller, Angela Miller and Marietta Winkle**

Thomas A. LeBlanc, OBA No. 14768
Jessica L.  Foutch, OBA No. 31851
Ryan A. McDonald, OBA No. 31645
Best & Sharp
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, OK 74103
Telephone:      (918) 582-1234
Facsimile:       (918) 585-9447
Email:            tleblanc@bestsharp.com
                      jfoutch@bestsharp.com
                      rmcdonald@bestsharp.com

***Attorneys for Defendant, Jerrod Lang***

s/ Taylor M. Riley
Taylor M. Riley