**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

AUSTIN P. BOND, as Special Administrator )
of the Estate of BILLY WOODS, Deceased, )
                                       )
      Plaintiff,                     )
                                       )   Case No.: 18-CV-108-RAW
vs.                                   )
                                   )   Jury Trial Demanded
                                   )   Attorney Lien Claimed
BOARD OF COUNTY COMMISSIONERS )
OF MUSKOGEE COUNTY, OKLAHOMA, )
                                       )
      Defendant.               )

**PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**DEPOSITION DESIGNATIONS OUT OF TIME**

**COMES NOW** the Plaintiff, Austin P. Bond ("Plaintiff"), as the Special Administrator of the Estate of Billy Woods, deceased ("Billy" or "Mr. Woods"), and respectfully seeks leave of this Court to file out of time designations of former-Defendant Angela Miller's deposition testimony in this matter as a result of her recent and sudden unavailability to testify live at the upcoming trial. In support of this motion, Plaintiff shows the Court the following:

**Introduction**

On December 15, 2016, Billy Woods, a 16-year-old boy, died in the custody of the Muskogee County Regional Juvenile Detention Center ("JDC"). The manner of Billy's death was suicide by hanging. The cause of Billy's death was the deliberate indifference of those responsible for his safety and well-being while he was in JDC custody — from the lowest level employees on shift during Billy's two day stay at the facility to Defendant BOCC, and every step in between. Billy's obvious substantial risk of suicide was met with indifference by each of the JDC staff he encountered.

1

At trial in this case, Plaintiff will, as an initial matter, establish violations of Billy's civil rights by each of the individuals working at the JDC the night of his death. Additionally, Plaintiff will establish that these individuals are agents of BOCC/County; that BOCC/County has a non-delegable duty to ensure the health and safety of juveniles housed at the JDC, including the duty to supervise and monitor a subcontractor's, in this case MCCOYS', operation of the JDC; that the BOCC/County tacitly encouraged, ratified, and/or approved of the unconstitutional acts and/or omissions of JDC staff; that the training, supervision, customs and practices of MCCOYS were so blatantly deficient that BOCC/County knew (either through actual or constructive knowledge), or it was obvious, such that BOCC should have known, that they posed substantial risks to the health and safety of residents like Billy; and that, despite this obvious risk, the BOCC/County failed to take reasonable steps to alleviate those risks in deliberate indifference to JDC residents', including Billy's, serious mental health needs.

To that end, Defendant's liability in this case is based, in part, on the actions of Jerrod Lang, Brandon Miller, Angela Miller, and Marietta Winkle, the four employees on duty the night that Billy died. It is important that each of these witnesses' testimony is available to the jury.  At this time, Plaintiff has successfully served three of the four JDC staff members on shift when Billy died – Mr. Lang, Brandon Miller, and Ms. Winkle – with subpoenas to appear and testify at the upcoming jury trial. After multiple unsuccessful attempts at serving Angela Miller with a subpoena to appear and testify, counsel for Plaintiff, Daniel Smolen, was able to make contact with Ms. Miller on the telephone.  Ms. Miller informed Mr. Smolen that she had just recently moved to Texas. She also informed Mr. Smolen that she had just spoken with counsel for Defendant, Andy Artus, and had informed Mr. Artus of her recent move.  As explained in this Motion, Angela Miller has provided significant relevant and compelling testimony, and it is important that at least portions

of her testimony are made available to the jury. As Angela Miller can no longer be compelled to

appear and testify at trial, and as there is no indication that she will be appearing voluntarily, it

will now be necessary to present portions of Angela Miller's deposition testimony to the jury.

While the Court's October 1, 2019 deadline for filing deposition designations has passed, no such

designations of Angela Miller's deposition testimony have been filed due to the fact that, in

October 2019, Ms. Miller resided in this District and there was no indication that would change.[1]

Plaintiff urges the Court, in light of the facts and circumstances presented in this motion, to find

that Plaintiff's failure to file designations of the deposition testimony of Angela Miller by the

October 1, 2019 deadline was the result of excusable neglect; and to grant Plaintiff leave to file

any such designations, together with counter-designations and objections out of time.

**Facts Relevant to this Motion**

1.    Jury trial in this matter is scheduled for July 7, 2020. *See* Dkt. #266.

2.    The deadline to file deposition designations was October 1, 2019. *See* Dkt. #258.

3.    Plaintiff did not designate any deposition testimony of Angela Miller ("Ms. Miller")

      on or before October 1, 2019.  This is due to the fact that, at that time, Ms. Miller lived

      within the subpoena power of this Court and could be compelled to testify at trial. In

      fact, Ms. Miller had lived within the subpoena power of this Court for most, if not all,

      of her life, and has strong family ties to the Muskogee area.[2]

---

[1]  Due to both the scope of Plaintiff's claims against the BOCC/County; and the widespread
deficiencies in the operation of the JDC and the training, staffing and supervision of JDC staff,
there are a large number of witnesses that Plaintiff will need to call at trial, it would have been
both impractical and a waste of judicial resources for Plaintiff to designate testimony from the
depositions of each and every witness on the chance a witness becomes unavailable before trial.
[2]  Angela Miller is former Defendant Brandon Miller's aunt. Angela Miller also testified that her
aunt, Margaret (Pope) Taylor used to work at the JDC.

3

4.    Counsel for Plaintiff have been attempting to serve a subpoena on Ms. Miller to compel her appearance and testimony at the upcoming jury trial.  After numerous failed attempts at the addresses counsel for Plaintiff had for Ms. Miller, counsel for Plaintiff was able to reach Ms. Miller via telephone.  During this conversation, Ms. Miller informed counsel that she had just recently moved out of the state.

5.    Ms. Miller was an agent of Defendant as an employee of the Muskogee County Juvenile Detention Center.  Ms. Miller was a detention officer at the facility and is one of four employees who were on shift during Billy's suicide and eventual discovery.

6.    Ms. Miller provided important testimony relevant to Plaintiff's claims against both MCCOYS and Defendant BOCC during her deposition. For example, Ms. Miller testified that JDC Superintendent Joe Washington had instructed her and other staff to *not* call 911 in the event of a medical emergency at the JDC before speaking with him first. *See* Dkt. #186-21 at 85:20 – 87:24. This likely explains where there was a 20-minute delay between the time Billy was found hanging in his room and when 911 was called. *Id.* at 88:3 – 89:20. Ms. Miller also testified that neither she, nor any of the other JDC employees working the night of Billy's death, had been trained on how to respond to a medical emergency. *Id.* at 84:17 – 85:13.

7.    In its Opinion and Order denying BOCC's Motion for Summary Judgment, the Court held that there are genuine questions of material fact as to whether Plaintiff can establish that the Board knew of and disregarded the substantial risk of inadequate training and supervision of MCCOYS employees and that the inadequate training and supervision had a causal connection to the violation of Billy's constitutional rights. *See* Dkt. #223 at 5. The Court further held that whether JDC employees, including Angela

Miller, were adequately trained as to the MCCOYS policies and procedures, CPR, First Aid, and suicide prevention are genuine issues of material fact. *Id.* at 6. The Court also held that whether the JDC employees were properly supervised, and whether BOCC subjectively or objectively knew of and disregarded any inadequacies are genuine issues of material fact. *Id.* As Angela Miller is one of only four employees who were on duty the night of Billy's death, her testimony regarding the training and supervision inadequacies Plaintiff has alleged is of great import.

## Legal Standard

As stated by the Tenth Circuit in *Perez v. El Tequila, LLC*:

> Courts may allow untimely filings "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). A finding of excusable neglect depends on four factors: "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (citation omitted). The most important factor is the third; an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004).

*Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017).

## Discussion

As noted, *supra,* courts typically weigh four factors when considering if the reason for missing a deadline constitutes "excusable neglect." It is Plaintiff's position that the first, second, and fourth factors lack significant relevance in this instance. Regarding the first factor, there will be no prejudice to the non-moving party, Defendant BOCC, if the Court grants Plaintiff the relief he seeks herein, other than the time spent on designations, counter-designations, and objections. Plaintiff, however, does not intend to burden either Defendant or the Court with lengthy

6:18-cv-00108-RAW   Document 277   Filed in ED/OK on 06/18/20   Page 6 of 8

designations. Angela Miller's deposition transcript is 254 pages long with approximately 6,350 lines of testimony.  Counsel for Plaintiff has diligently worked to identify only those portions of her testimony that are highly relevant, probative or unique.  At this time, counsel for Plaintiff intends to designate no more than 350 lines of transcript, essentially cutting 254 pages of testimony down to 14 pages of testimony.  As counsel for Plaintiff has already put in significant work on identifying only the most important portions of Ms. Miller's deposition transcript, Plaintiff is ready to provide his designations to Defendant immediately if the Court grants this Motion.

Regarding the second factor, there will be no impact on the judicial proceedings, as Plaintiff and Defendant will obviously need to complete their designations, counter-designations, and objections as soon as practicable, and before the July 7 commencement of trial.

Regarding the fourth factor, Plaintiff's counsel has not acted in bad faith. Indeed, Plaintiff's counsel was unaware that Ms. Miller had moved out of state until very recently, had no advanced notice Ms. Miller was even considering moving, and Defendant's counsel learned of Ms. Miller's new residence at nearly the same time as Plaintiff's counsel.

Accordingly, the third factor – the reason for the delay, including whether it was within reasonable control of the movant – is the most important of the four. Clearly, Plaintiff had no control over Angela Miller's choice to move out of state after the October 2019 designations deadline. Ms. Miller gave no indication that she planned to move at the time of her deposition in March 2019. Indeed, Ms. Miller has significant family ties in Oklahoma. Further, as stated above, it would have been, in Plaintiff's opinion, an unnecessary use of time and resources to designate the deposition testimony of multiple or all MCCOYS employees. Plaintiff and Defendant took twenty-two (22) depositions during the discovery period of this case.

Further aiding Plaintiff's argument that he had no control over the circumstances of the delay is the fact that the trial date in this case has moved more than once due to the Court's extremely busy docket and the COVID-19 pandemic. It is reasonable to assume that the longer a case extends, the more likely that a witness who was presumed to be available for trial ultimately becomes unavailable for some reason. Through the fault of no one, the July 7, 2020 trial date is over nine months after the deposition designation deadline. Plaintiff has sufficiently demonstrated that he lacked control over the circumstances of the delay, which is "the most important single...factor...in determining whether neglect is excusable. *City of Chanute v. Williams Nat. Gas Co.,* 31 F.3d 1041, 1046 (10th Cir. 1994) (citations omitted).

WHEREFORE, Plaintiff respectfully requests this Court grant Plaintiff's Motion for Leave to File Deposition Designations Out of Time.[3]

Respectfully submitted,

**SMOLEN & ROYTMAN**

/s/ Bryon D. Helm
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com
bobblakemore@ssrok.com

***Attorneys for Plaintiff***

---

[3] Counsel for Defendant objects to the relief requested herein.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of June 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Bryon D. Helm