# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

AUSTIN P. BOND, as Special Administrator
of the Estate of BILLY WOODS, Deceased,

    Plaintiff,

vs.

BOARD OF COUNTY COMMISSIONERS
OF MUSKOGEE COUNTY, OKLAHOMA,

    Defendant.

Case No.: 18-CV-108-RAW

Jury Trial Demanded
Attorney Lien Claimed

## PRETRIAL ORDER

The Pretrial Conference in this matter was held on June 25, 2020. The Plaintiff, Austin P. Bond ("Plaintiff"), as Special Administrator of the Estate of Billy Woods ("Billy" or "Mr. Woods"), deceased, appeared by counsel Daniel E. Smolen, Bob Blakemore and Bryon Helm. The Defendant Board of County Commissioners of Muskogee County ("Defendant," "Defendant Board," and/or "Board") appeared through counsel Andy Artus, Michael Carr, and Taylor Riley.

Following the pretrial conference held before the court, IT IS SO **ORDERED:**

**I.**     **This is an action for:**

    **A. Plaintiff asserts the following causes of action (with a factual basis for each):**

### FIRST CLAIM FOR RELIEF

**Violation of the Eighth the Fourteenth Amendments to the Constitution of the United States
(42 U.S.C. § 1983)**

    **A. Underlying Constitutional Violations**

      ■ **Deliberate Indifference to a Substantial Risk of Suicide**

1.     Because juveniles in detention facilities must rely on detention authorities to treat their serious medical needs, those detention authorities have an obligation to provide necessary medical care to them. If a juvenile detainee is at substantial risk of suicide, that is a serious medical need. In this case, Plaintiff claims that Billy Woods was at substantial risk of suicide and that Jerrod Lang, an agent of Defendant Board of County

1

Commissioners of Muskogee County ("BOCC", also referred to herein as the "County"), violated the Fourteenth Amendment to the United States Constitution by showing deliberate indifference to that substantial risk of suicide.

2.   Jerrod Lang knew, or it was obvious, that Billy Woods was at significant risk of suicide.

3.   Lang disregarded the substantial risk of suicide that Billy faced.

4.   Lang's disregard of Billy's substantial suicide risk constitutes deliberate indifference to Billy's serious health and safety needs.

5.   As a direct and proximate result of Lang's deliberate indifference, Billy experienced physical pain, severe emotional distress, mental anguish and death.

6.   Lang enhanced the known dangers and excessive risks to Billy's health and safety by verbally abusing, belittling and humiliating him.

■   **Deliberate Indifference to Billy Woods' Need for CPR**

7.   Plaintiff also asserts that Lang, Brandon Miller ("B. Miller") and Marietta Winkle, all agents of BOCC, violated the Fourteenth Amendment to the United States Constitution by failing to perform CPR on Billy Woods after he was found unresponsive in his room. Plaintiff claims that this failure constitutes deliberate indifference to Billy's serious medical needs.

8.   Billy Woods was in obvious need of cardiopulmonary resuscitation ("CPR") treatment.

9.   Lang, B. Miller and/or Marietta Winkle were deliberately indifferent to Billy Woods' obvious need for CPR.

10.   Lang, B. Miller and/or Marietta Winkle's deliberate indifference was a proximate cause of increased pain, a worsening of Billy's condition and/or death.

■   **Failure to Timely Call 9-1-1**

11.   Plaintiff also claims that Angela Miller ("A. Miller") and Marietta Winkle, agents of BOCC, violated the Fourteenth Amendment to the United States Constitution by delaying calling 911 for after Billy Woods was found unresponsive in his room. Plaintiff claims that this alleged delay constitutes deliberate indifference to Billy's serious medical needs.

12.   Billy Woods was in obvious need of emergency medical transport.

13.     Angela Miller and/or Marietta Winkle were deliberately indifferent to Billy Woods' obvious need for emergency medical transport.

14.     Angela Miller and/or Marietta Winkle's deliberate indifference was a proximate cause of increased pain, a worsening of Billy's condition and/or death.

■ **Failure to Intervene**

15.     Plaintiff additionally alleges that Lang, B. Miller, A. Miller and Winkle are liable under the theory of a failure to intervene.

16.     During the constitutional violations committed by Lang, B. Miller, A. Miller and Winkle, each of these Defendants stood by without intervening to prevent the violation of Billy's constitutional rights, even though they had the opportunity and duty to do so.

17.     As a direct and proximate result of Lang, B. Miller, A. Miller and Winkle's failure to intervene to prevent the violation of Billy's constitutional rights, Billy suffered injuries and damages (including death) as alleged herein.

18.     These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

19.     The misconduct described in this Claim for Relief was objectively unreasonable and was undertaken intentionally, with malice, willful and/or reckless indifference to Billy's constitutional rights

**B.     Municipal/*Monell* Liability (BOCC)**

20.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

21.     BOCC/the County are "persons" for purposes of 42 U.S.C. § 1983.

22.     At all times pertinent hereto, BOCC/the County were acting under color of state law.

23.     Muskogee County Council of Youth Services ("MCCOYS") was endowed by the County with powers or functions governmental in nature, such that MCCOYS became an instrumentality of the state and subject to its Constitutional limitations.

24.     BOCC/the County were charged with implementing, maintaining and assisting in developing the policies and custom in place at the Muskogee County Juvenile Detention Center ("MJDC" or "MCJDC"),

including the standards adopted by OJA, with respect to the safekeeping, protection, supervision and medical and mental health care of the juvenile residents at MJDC, including Billy, and have a shared responsibility to adequately train and supervise their employees and agents/MJDC staff.

25.     There is an affirmative causal link between the aforementioned deliberate indifference to Billy's serious medical and mental health needs, his safety, and his civil rights; and the following customs, policies, and/or practices which MCCOYS and the County carried, maintained or otherwise possessed responsibility for.

**<u>Failure to Train / Failure to Supervise</u>**

26.     The following description of the facts/evidence is illustrative and is not exclusive.  Plaintiff will present extensive evidence of failure to train/supervise at trial including but limited to the following.

27.     Despite being promoted to a supervisor position, Lang did not receive any formal training in how to work, let alone supervise, at the Facility.  It is mandated that "[a]ll staff shall be trained on facility policy and procedure and a training record be established for each staff member." OAC 377:3-13-43(8).  Nevertheless, there was general confusion and disagreement about the Facility policies and protocols due to a lack of training and education. Detention workers and supervisors alike did not know or understand the Facility policies. For example, and pertinently, the Facility's suicide precaution policy requires that "[w]hen the juvenile is in his/her room they are monitored by intercom and visually observed ***every five (5) minutes.***"  However, Lang, B. Miller and Winkle had no knowledge of the 5-minute observation requirements for suicide watch, and none of them knew residents were to be monitored with the intercom.  While A. Miller was stationed at the control center, and could have monitored Billy via intercom, she failed to do so, presumably due to her lack of training on the policies and procedures.  This simple measure, of using the intercom to monitor Billy, very well could have saved his life.  However, the County and MCCOYS did not care enough about the welfare of MJDC residents to train the staff concerning this basic safety measure.

28.     The Juvenile Detention Standards additionally require that "[t]he secure juvenile detention facility shall develop and maintain written policy and procedure which: […] assures that detention staff and other personnel are trained to respond to health related situations; and establishes a training program that includes: […] administration of first aid and cardiopulmonary resuscitation (CPR) [and] signs and symptoms of mental illness,

retardation and drug and alcohol abuse […]." OAC 377:3-13-45(6)(E).  The County and MCCOYS also fundamentally failed to comply with these requirements.

29.     As noted above, despite Shift Supervisors being tasked with conducting suicide assessments, the supervisors were provided with no formal training on recognizing signs and symptoms of suicidal ideation or behaviors.  Lang and the other staff were simply left to their own devices to "figure things out […]."  This failure to train and supervise the under-qualified staff was destined for disaster.  Without anyone having the requisite training and qualifications in mental health at MJDC, the entire resident population, including Billy, was put at unnecessary and excessive risk of harm.

30.     Overall, BOCC/County and MCCOYS utterly failed to train and supervise MJDC staff with respect to basic, and essential, policies and procedures necessary to the safety of the juvenile residents, in deliberate indifference to the harm likely to result.

**Inadequate Staffing**

31.     The following description of the facts/evidence is illustrative and is not exclusive.  Plaintiff will present extensive evidence of inadequate staffing at trial including but limited to the following.

32.     The Facility also has severe and chronic staffing deficiencies which place the residents at increased and substantial risk of harm. Lang was promoted to Shift Supervisor after working at the Facility for approximately four (4) months. And before being promoted, Lang turned the promotion down twice. Lang was promoted so quickly because *the Facility was "short staffed."* All of the staff at the Facility in December 2016 had worked there for *less than one (1) year* and were considered to be "short-term".

33.     With respect to staffing, the Juvenile Detention Standards require "[a] *minimum of two direct-care staff* […] on duty at all times in the facility […] [and that] [j]uveniles in detention shall be supervised *at all times."* OAC 377:3-13-44(4).  According to Ms. Winkle, on Friday and Saturday nights, she was the only direct care staff member at the Facility.  And the Facility relies upon maintenance personnel to "check on" the residents. The lack of adequate and competent staff was a moving force behind Billy's suffering and death.

34.     The lack of staffing forced unqualified and untrained personnel into supervisory roles, placing residents like Billy at substantial risk of harm.

**Other Evidence of an Unconstitutional Custom**

35.     The following description of the facts/evidence is illustrative and is not exclusive.  Plaintiff will present extensive evidence of an Unconstitutional Custom at trial including but limited to the following.

36.     It appears that the reckless neglect of Billy was not an isolated incident.  OCA uncovered evidence that other young residents were mistreated at the Facility and that the Facility lacked basic equipment necessary to safely care for the juvenile population.  For instance, as OCA found, "[a]n unknown male resident was left unsupervised, by [B.] Miller, with access to a shaving razor for approximately four minutes" and "[v]ideo showed the resident picking up the razor and rubbing his thumb over the blades."  OCA further found that MJDC staff failed to check on other residents for upwards of one hour and forty-five minutes, despite falsely documenting that such checks took place every fifteen minutes. A staff member verbally abused yet another juvenile referring to him as a "retard".  Lastly, OCA found that the Facility was not equipped with a "cut down" tool for hanging victims or a defibrillator.

**State of Mind**

37.     As the Tenth Circuit has held and reasoned, "[t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998). As the *Barney* Court explained:

> Deliberate indifference … is defined differently for Eighth Amendment and municipal liability purposes. In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the official. *In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it.*

*Barney,* 143 F.3d at 1308, n. 5 (citations omitted) (emphasis added).

38.     BOCC/County has a non-delegable duty to ensure the safekeeping of juveniles housed at the Facility. This includes the duty to supervise and monitor MCCOYS' operation of the Facility.

39.     Here, the evidence will show that the training, supervision, customs and practices of MCCOYS were so blatantly deficient that BOCC/County knew (either through actual or constructive knowledge), or it was obvious, such that BOCC should have known, that they posed substantial risks to the health and safety of residents

like Billy.  Nevertheless, BOCC/the County failed to take reasonable steps to alleviate those risks in deliberate indifference to inmates', including Mr. Woods', serious mental health needs.

40.    BOCC/County tacitly encouraged, ratified, and/or approved of the unconstitutional acts and/or omissions alleged herein.

41.    There is an affirmative causal link between the aforementioned customs, policies, and/or practices and Billy's injuries and damages as alleged herein.

### B. Defenses to Each Cause of Action:

Defendant Board objects to Plaintiff's above assertions since the Court has held in its Order ruling on Defendant Board's Motion for Summary Judgment that Plaintiff's remaining claims are: 1) Failure to train; 2) Failure to supervise; and 3) Inadequate staffing. *See* Court Doc. 233, p. 1.

At all relevant times, Oklahoma law required RJDC be operated according to one of three methods, one being that Defendant Board "shall" contract with an entity to operate RJDC. *See* OKLA. STAT. tit. 10A, § 2-3-103(C)(3). Therefore, as authorized by Oklahoma law and during the incidents at issue, the Muskogee County Council of Youth Services ("MCCOYS") operated RJDC under a subcontract with Defendant Board and with Oklahoma's Office of Juvenile Affairs' ("OJA") approval. MCCOYS operated RJDC for nineteen years; prior to this incident, there had been no deaths in the facility.

Moreover, OJA conducted annual inspections of RJDC, ensuring RJDC, and MCCOYS' operation of it, met State-mandated requirements for secure juvenile detention centers. *See* OKLA. ADMIN. CODE § 377:3-13-35; *see also* 377:3-13-37 through 377:3-13-48. Pursuant to OKLA. STAT. tit. 10A, § 2-3-103(C)(7), "[t]he operation of a juvenile detention facility by a county shall constitute a quasi-judicial function and is also hereby declared to be a function of the State of Oklahoma for purposes of the Eleventh Amendment to the United States Constitution." As such, the Board's reliance on yearly OJA inspections of RJDC is justified. *See* OKLA. STAT. tit. 10A, § 2-3-103(C), (D).

Defendant Board contends that neither MCCOYS nor its employees (including Jerrod Lang, Brandon Miller, Angela Miller, and Marieta Winkle) were Defendant Board's agents. Additionally, Defendant Board asserts MCCOYS' policies for RJDC were constitutionally adequate, and no policy, procedure, custom, and/or practice of Defendant Board caused any violation of Decedent's constitutional rights. Additionally, Defendant Board contends MCCOYS' staff were adequately trained. Defendant Board denies that it was deliberately indifferent with regard to its supervision of MCCOYS and was unaware of any problems with MCCOYS' training or supervision of its employees. Defendant Board further denies that the alleged violations of Woods' federal constitutional rights were caused by inadequate staffing by MCCOYS of the RJDC, as there were four MCCOYS employees working the night of the incident and only two were required. In addition, the Board asserts the following defenses:

1.    The Board did not personally participate in any underlying constitutional violation of Decedent.

2.    The Board cannot be held liable for any federal constitutional violation resulting from the

acts of agents, servants, appointees, or employees under the doctrine of *respondeat superior* and/or vicarious liability.

3.      The Board has not executed or implemented any policy or procedure which can be found in any ordinance, regulation, policy statement or decision officially adopted by the Board, or found in a pattern of persistent practices known to and approved by the Board that would be considered unconstitutional.

4.      Plaintiff has failed to set forth any allegation which would create a material issue of fact as to the requisite, culpable state of mind of deliberate indifference on behalf of the Board.

5.      The Board had no prior notice of any inadequacies with MCCOYS in their staffing, training, supervision, policies, procedure, or practices at the RJDC, or of deliberate indifference or other misconduct on the part of MCCOYS' staff.

6.      The Board was not deliberately indifferent to any substantial risk of harm to the Decedent or to other RJDC detainees.

7.      The supervision and/or training of MCCOYS' employees at RJDC did not cause any violation of the Decedent's constitutional rights, and even if it did, there is no evidence that the need for more or different training or supervision was so obvious, and/or any inadequacy so likely to result in the violation of constitutional rights, that the Board could reasonably be said to have been deliberately indifferent to the need for additional training or supervision.

8.      To the extent that Plaintiff is claiming punitive damages against it, the Defendant is immune from any award of punitive damages.

9.      Defendant's actions constituted a quasi-judicial function. *See* 10 A O.S. § 2-3-103.C.7.

10.     Defendant's actions were a function of the state, and Defendant is entitled to 11th Amendment Immunity. *See* 10 A O.S. § 2-3-103.C.7. Defendant adopts its arguments raised in Court Doc. 38 and 54 as if stated herein.

11.     MCCOYS is a Youth Services Agency and is a political subdivision. *See* 51 O.S. § 152 (11)(O), also *see* 10 A O.S. § 2-7-306 (A).

12.     Defendant adopts its arguments and authorities raised in its Motion for Summary Judgment and Reply briefs, Court Doc. 158 and 207, as if stated herein.

**Affirmative Defenses**

Defendant is entitled to settlement credit or an offset should Plaintiff settle with any other Defendant, pursuant to 12 O.S. § 832 (H) and/or federal common law.[1]

**II.     Remedies:**

---

[1]      Plaintiff specifically denies that BOCC is entitled to a "set-off" or "settlement credit", and will be prepared to brief and argue this issue should it ripen.

Plaintiff is seeking compensatory damages for Billy Woods' physical and emotional distress, pain and suffering and death. Plaintiff is seeking $20 million (Twenty Million Dollars) in compensatory damages.

Defendant Board also objects to the amount of damages sought by Plaintiff, $20 million (Twenty Million Dollars), as Plaintiff has never substantiated how it was derived. *See* Proposition XI.C to Defendant Board's Motion and Brief in Limine (Court Doc. 171, pp. 24-25); *see also* Proposition XI.C to Defendant Board's Reply Supporting its Motion and Brief in Limine (Court Doc. 218, pp. 7-8).

Plaintiff will seek reasonable attorneys' fees, costs and expenses if he prevails in this action.

**III.      Federal jurisdiction is invoked upon the ground:**

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of, and to redress deprivations of, rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**IV.      The following facts, and issues of law, are admitted and require no proof:**

1.      Defendant Muskogee County Council of Youth Services ("MCCOYS") is a private, domestic, not-for-profit corporation, a Youth Services Agency, and, for purposes of The Government Tort Claims act only, a political subdivision under Oklahoma law .

2.      At all pertinent times, MCCOYS staffed and operated the Muskogee County Regional Juvenile Detention Center under a subcontract with Defendant Board of County Commissioners for Muskogee County ("BOCC" or "the County").

3.      BOCC is a statutorily-created governmental entity.

4.      As a matter of Oklahoma law and contract with OJA, the County has a duty to provide for the temporary detention of children who are or may be subject to secure detention as required by 10A O.S. §2- 3-103.

5.      The County was authorized, pursuant to Oklahoma statutory law (10A O.S. §2-3-103), to contract with an entity such as MCCOYS for the operation of a juvenile detention facility.

6.      Billy Woods was a 16-years-old boy at the time he was brought to RJDC on December 14, 2016.

7.      At approximately 8:36 p.m. on December 15, 2016, Lang discovered Woods had hung himself in Room 1 at the RJDC.

8.      The manner of Billy's death was suicide by hanging.

9.      MCCOYS' policies required Muskogee County Regional Juvenile Detention Center staff to conduct fifteen-minute site checks on juveniles when the juveniles are in their rooms.

10.     On December 15, 2016 from approximately 6:34 p.m. to 8:36 p.m., Jerrod Lang, Brandon Miller, Angela Miller, and Marietta Winkle, in violation of MCCOYS' policy, did not conduct fifteen-minute site checks on Billy Woods, who was in his room during that period.

11.     MCCOYS' policies required Muskogee County Regional Juvenile Detention Center staff conduct five-minute site checks on juveniles who are on suicide watch and are confined in their rooms.

12.     MCCOYS' policies required Muskogee County Regional Juvenile Detention Center staff administer first aid and/or CPR as necessary when a juvenile is seriously injured or has a medical emergency.

13.     On December 15, 2016, after Lang discovered Woods had hung himself in Room 1 at the RJDC, Jerrod Lang, Brandon Miller, Angela Miller, and Marietta Winkle did not administer CPR to Billy Woods.

14.     On the MCCOYS December 15, 2016 "Daily Notes" sheet for Billy Woods, Jerrod Lang preemptively and falsely indicated, in violation of MCCOYS' policy, that fifteen-minute site checks were conducted on Billy Woods from approximately 6:45 p.m. to 10:45 p.m.

The parties have stipulated the following will not be at issue, brought to the jury's attention, submitted as evidence, referenced, or otherwise discussed during the jury trial of this matter:

1. Testimony of the following witnesses that Defendant has not had a fair opportunity to depose: D.S., R.G., J.P., P.H., R.W., Kali Wells, Isabella Mahler, Marcus Pilkington, Samantha Garcia, and    Marcus Pilkington.

2. Plaintiff's expert witness (Dr. Peter Ash) providing an opinion about Defendant Board.

3. Evidence concerning the Allaxis and/or Attollo group homes.

4. Damages on behalf of Billy Woods' parents.

5. Lost wages damages.

6. Previous lawsuits against Defendant Board.

7. Newspaper articles and media publications.

8. The possible existence of liability insurance.

9. Expert medical opinions from any lay witnesses.

10. Financial condition of the parties.

11. Claims dismissed during summary judgment.

12. Any expert witness opinions not previously disclosed.

13. Personalizing the case/Golden Rule

**V.      The reservations as to the facts recited in Paragraph IV are as follows:**

None.

**VI.     The following facts, though not admitted, are not to be contested at the trial by evidence to the contrary:**

That the Board is not liable to Plaintiff for any alleged violations of Decedent's Oklahoma constitutional rights.

**VII.    The parties agree the following issues of fact, and no others, remain to be litigated upon the trial:**

**A.  Agreed Issues of Fact**

1. Whether there was an underlying constitutional violation by an agent of the Board.

2. Whether Plaintiff is entitled to compensatory damages; and if so, the amount.

3. Whether Billy Woods was dead such that he could not have been resuscitated when Jerrod Lang found him.

4. Whether a liaison of the Board of County Commissioners attended MCCOYS' Board of Directors' meetings and reported the substance of those meetings to the Board of County Commissioners.

**B.  Plaintiff's Statement of Additional Issues of Fact**

1.      Whether MCCOYS employees, including Lang, B. Miller, A. Miller and Winkle, were agents or employees of BOCC/the County.
2.      Whether during his incarceration at the MJDC, Billy Woods exhibited serious medical or mental health needs.
3.      Whether BOCC (1) promulgated, created, implemented or possessed responsibility for the continued operation of an official policy or custom that (2) caused the complained of constitutional harm.

4.      Whether there is an affirmative causal link between Billy Woods's pain and suffering, increased pain and suffering, worsening of his condition and/or death and any 'policy' or 'custom' for which BOCC possessed responsibility.

5.      Whether there is an affirmative causal link between Billy Woods's pain and suffering, increased pain and suffering, worsening of his condition and/or death and any failure to train Lang, A. Miller, B. Miller or Winkle.

6.      Whether there is an affirmative causal link between Billy Woods's pain and suffering, increased pain and suffering, worsening of his condition and/or death and any failure to supervise Lang, A. Miller, B. Miller or Winkle.

7.      Whether there is an affirmative causal link between Billy Woods's pain and suffering, increased pain and suffering, worsening of his condition and/or death and any failure to provide adequate staffing at the MJDC.

8.      Whether BOCC/Muskogee County had actual or constructive notice, such that it should have known, that its action or failure to act was substantially certain to result in a constitutional violation, and it disregarded the risk.

9.      Whether any substantial risks to Billy Woods' health and/or safety were obvious.

10.     Whether Billy Woods' substantial risk of suicide was obvious.

11.     Whether Lang disregarded a known or obvious and substantial risk that Billy Woods would commit suicide.

12.     Whether Billy Woods was in obvious need of CPR treatment.

13.     Whether Lang, B. Miller and/or Marietta Winkle were deliberately indifferent to Billy Woods' obvious need for CPR.

14.     Whether Lang, B. Miller and/or Marietta Winkle's deliberate indifference was a proximate cause of increased pain, a worsening of Billy's condition and/or death.

15.     Whether Billy Woods was in obvious need of emergency medical transport.

16.     Whether Angela Miller and/or Marietta Winkle were deliberately indifferent to Billy Woods' obvious need of emergency medical transport.

17.     Whether Angela Miller and/or Marietta Winkle's deliberate indifference was a proximate cause of increased pain, a worsening of Billy's condition and/or death.

18.     Whether Lang, B. Miller, A. Miller and/or Winkle, each of these Defendants stood by without intervening to prevent the violation of Billy's constitutional rights, even though they had the opportunity and duty to do so.

19.     Whether as a direct and proximate result of Lang, B. Miller, A. Miller and/or Winkle's failure to intervene to prevent the violation of Billy's constitutional rights, Billy suffered the injuries and damages (including death).

20.     Whether Lang, B. Miller, A. Miller and/or Winkle had a reasonable opportunity to prevent this harm, but failed to do so.

21.     Whether any failure to intervene was objectively unreasonable and was undertaken intentionally, with malice, willful and/or reckless indifference to Billy's constitutional rights.

22.     Whether Lang, B. Miller, A. Miller and/or Winkle, was deliberately indifferent to Billy Woods' serious medical needs by completely denying Billy Woods care although presented with recognizable symptoms which potentially created a medical emergency.

23.     Whether Lang, B. Miller, A. Miller and/or Winkle was deliberately indifferent by preventing Billy Woods from receiving treatment or denying him access to medical or mental health personnel

capable of evaluating the need for treatment.

24.     Whether Lang, B. Miller, A. Miller and/or Winkle delayed Billy Woods's receipt of necessary medical care and whether such delay resulted in substantial harm.

25.     Whether Lang, B. Miller, A. Miller and/or Winkle's constitutional violations resulted in, or were a moving force behind, pain, severe emotional distress and mental anguish suffered by Billy Woods.

26.     Whether Billy Woods' condition was objectively serious.

## C.  Defendant's Statement of Additional Issues of Fact

1.   If there was an underlying constitutional violation by an agent of the Board, whether that constitutional violation was caused by a policy, custom, or widespread and persistent practice of the Board.

2.  If there was an underlying constitutional violation that was caused by a policy, custom, or widespread and persistent practice of the Board, was that violation so likely to have occurred that the Board was deliberately indifferent.

3.  Whether the Board was aware of problems with MCCOYS' operation of the RJDC, such that it rises to the level of deliberate indifference.

4.  Whether MCCOYS was an agent of the Board and if so, whether MCCOYS' employees were agents of the Board.

## VIII.     This section shall include a separate exhibit list for each party.

## A.       Plaintiffs' Exhibit List

| EX # | DESCRIPTION | Objection(s) |
|---|---|---|
| 1. | MCJDC Surveillance Video – December 15, 2016 (with audio) | *** **OBJECTION OVERRULED** *** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, cumulative, hearsay, authenticity. Object to the extent this is different to Plaintiff's Exhibit #1 as it has been produced. |
| 2. | DHS Training Records of Shannon Iwanski | *** **OBJECTION SUSTAINED** *** <br><br> Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, confusing the issues, misleading the jury, wasting time, hearsay, authenticity. |
| 3. | 9-1-1 call re Billy Woods Suicide (audio recording) | |

| 4. | Billy Woods EMS Prehospital Care Report – Narrative | ***OBJECTION OVERRULED IF PX4 MADE SAME AS DX47***<br><br>Objection to the extent this is incomplete/not the same as Defendant's Exhibit 47 (Plaintiff's Exhibit 4 only contains one page of a three-page report, whereas Defendant's Exhibit 47 is the complete, unredacted record). |
|---|---|---|
| 5. | Medical Examiner's Report | ***OBJECTION SUSTAINED***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine re the Medical Examiner's Report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity; no proper foundation for admission pursuant to 63 O.S. § 949. Defendant Board also objects for those reasons stated in its Motion in Limine and Reply supporting same. (Court Doc. 171 and 218). |
| 6. | Muskogee Police Department Body-Cam Video (with audio) | ***OBJECTION OVERRULED***<br><br>Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, cumulative, hearsay, authentication. |
| 7. | DHS-OCA Referral Information Report | ***OBJECTION SUSTAINED***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity. |
| 8. | DHS-OCA Report to District Attorney | ***OBJECTION SUSTAINED***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity, improper impeachment, improper rebuttal. |

| 9. | Photographs taken by Muskogee PD of Billy in his room after his death. | *** **OBJECTION OVERRULED** *** <br><br> Objection. FRE 403; unfairly prejudicial, cumulative. |
|---|---|---|
| 10. | Policy and Procedures for the MCJDC <br><br> Bates: MCCOYS 298-356 | |
| 11. | MCJDC Job Descriptions <br><br> Bates: MCCOYS 669-679 | |
| 12. | Billy Woods Suicide Risk Assessment <br><br> Bates: MCCOYS 24 | |
| 13. | Intake, Admission and Visitation Documents from Billy's MCJDC file. | |
| 14. | Daily Notes re Billy Woods – December 14, 2016 <br><br> Bates: MCCOYS 879 | |
| 15. | Daily Notes re Billy Woods – December 15, 2016 <br><br> Bates: MCCOYS 50 | |
| 16. | Billy Woods – Release Form for Billy to go to court on December 15, 2016 <br><br> Bates: MCCOYS 46 | |
| 17. | Night Log – December 14-15, 2016 <br><br> Bates: MCCOYS 1410 | |
| 18. | Daily Notes re Other Juvenile Residents – December 15, 2016 | *** **OBJECTION OVERRULED** *** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay. |
| 19. | Night Log December 15-16, 2016 | *** **OBJECTION OVERRULED** *** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay. |
| 20. | Incident Report by Jerrod Lang – December 15,2016 <br><br> Bates: MCCOYS 12 | |

| 21. | Incident Report by Brandon Miller – December 15,2016<br><br>Bates: MCCOYS 15-16 | |
|-----|---------------------------------------------------------------------------------|---|
| 22. | Incident Report by Angela Miller – December 15, 2016 | |
| 23. | Incident Report by Jackie Winkle – December 15, 2016<br><br>Bates: MCCOYS 13 | |
| 24. | Incident Report by Joe Washington – December 15,2016<br><br>Bates: MCCOYS 9-11 | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 25. | OSBI Report re Death of Woods | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 26. | Audio Recording of OSBI and OCA Interview of Brandon Miller | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 27. | Audio Recording of OSBI and OCA Interview of R. G. | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity. |
| 28. | Audio Recording of OSBI and OCA Interview of Jackie | **\*\*\* OBJECTION SUSTAINED \*\*\*** |

| | Winkle | Objection based on the Court's ruling on Defendant Board's Motion in Limine re the OCA investigation/report (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
|---|---|---|
| 29. | Audio Recording of OSBI and OCA Interview of Jerrod Lang | **\*\*\* OBJECTION SUSTAINED \*\*\*** <br><br> Objection based on the Court's ruling on Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 30. | Audio Recording of OSBI and OCA Interview of D. S. | **\*\*\* OBJECTION SUSTAINED \*\*\*** <br><br> Objection based on the Court's ruling on Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity. |
| 31. | Muskogee PD Officer Mills Incident Supplement Report and Scene Diagram | **\*\*\* OBJECTION SUSTAINED \*\*\*** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity. |
| 32. | Lang's Handwritten Statement for Muskogee PD – December 15, 2016 | **\*\*\* OBJECTION SUSTAINED \*\*\*** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |
| 33. | Muskogee PD Investigator Case Narrative | |
| 34. | Notification Concerning Findings of Child Abuse—Neglect | **\*\*\* OBJECTION SUSTAINED \*\*\*** <br><br> Objection based on the Court's ruling on |

| | | |
|---|---|---|
| | Bates: MCCOYS 62-68 | Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity. |
| 35. | Angela Miller Appeal to OCA and Denial Letter | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 36. | Lang Appeal to OCA and Denial Letter | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 37. | Brandon Miller Finding of Neglect Upheld Letter | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 38. | Winkle Appeal to OCA and Denial Letter | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Objection based on the Court's ruling on Defendant Board's Motion in Limine (Court Doc. 249). Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, confusing the issues, misleading the jury, cumulative, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 39. | MCJDC Staff Meeting Minutes<br><br>Bates: MCCOYS 440-470 | **\*\*\* OBJECTION OVERRULED \*\*\***<br><br>Defendant Board objects to MCCOYS 460 to MCCOYS 470 as those pages |

| | | |
|---|---|---|
| | | contain meetings from before Lang, A. Miller, B. Miller, or Winkle were employed at RJDC. FRE 401-403, 801-803, 901; relevance, confusing the issues, misleading the jury, hearsay, authenticity, improper impeachment, improper rebuttal. |
| 40. | MCJDC Training Folder  Bates: LANG.1-107 | |
| 41 | MCJDC Time Sheets  Bates: MCCOYS 781-794 | |
| 42. | Jackie Winkle Personnel File (Selected Pages) | |
| 43. | Jerrod Lang Personnel File (Selected Pages) | |
| 44. | Brandon Miller Personnel File (Selected Pages) | |
| 45. | Angela Miller Personnel File (Selected Pages) | |
| 46. | Anthony Cornwell Personnel File (Selected Pages) | **\*\*\* OBJECTION OVERRULED \*\*\***  Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |
| 47. | Joe Washington Jr Personnel File (Selected Pages) | **\*\*\* OBJECTION OVERRULED \*\*\***  Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |
| 48. | Dorothy Brown Personnel File (Selected Pages) | **\*\*\* OBJECTION OVERRULED \*\*\***  Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |

| 49. | Order for Detention<br><br>Bates: MCCOYS 37 | |
|---|---|---|
| 50. | BOCC Certificate to Operate Juvenile Detention Center (expiration date: September 2016) | |
| 51. | BOCC Certificate to Operate Juvenile Detention Center (expiration date: May 2018) | |
| 52. | Secure Detention Contract (BOCC & OJA) | *** **OBJECTION OVERRULED IF INSURANCE REFERNCE REDACTED (in white)** ***<br><br>Objection. FRE 401-403, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, cumulative, authenticity. Defendant Board also objects to the Exhibit's reference to insurance at page 109, ¶ C. |
| 53. | Detention Center Contract (BOCC & MCCOYS) – July 1, 2016 – June 30, 2017 | *** **OBJECTION OVERRULED IF INSURANCE REFERNCE REDACTED (in white)** ***<br><br>No objection so long as the reference to insurance (at Article IV, MCCOYS 368) is redacted. |
| 54. | Detention Services Contract (BOCC & MCCOYS) – 2016 | |
| 55. | Letter from OJA to BOCC re license revocation – January 17, 2017 | *** **OBJECTION SUSTAINED** ***<br><br>Objection based on the Court's ruling during the Pre-trial Conference on Defendant Board's Motion in Limine (prohibiting evidence/testimony re breach of contract) (Court Doc. 249). FRE 401-403, 407, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, cumulative, hearsay, subsequent remedial measures, authenticity. |
| 56. | Termination of Juvenile Detention Contract (from MCCOYS to BOCC) – March 2017. | *** **OBJECTION SUSTAINED** ***<br><br>Objection based on the Court's ruling during the Pre-trial Conference on Defendant Board's Motion in Limine (prohibiting evidence/testimony re breach of contract and to the extent it |

| | | |
|---|---|---|
| | | references the OCA investigation) (Court Doc. 249). FRE 401-403,407, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, cumulative, hearsay, subsequent remedial measures, authenticity. |
| 57. | OJA Letter to BOCC and MCCOYS – December 22, 2016 | *** **OBJECTION SUSTAINED** *** <br><br> Objection based on the Court's ruling during the Pre-trial Conference on Defendant Board's Motion in Limine (prohibiting evidence/testimony re breach of contract) (Court Doc. 249). FRE 401-403,407, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, cumulative, hearsay, subsequent remedial measures, authenticity. |
| 58. | Digital Photographs by Iwanski | *** **OBJECTION SUSTAINED** *** <br><br> Objection based on the Court's ruling during the Pre-trial Conference on Defendant Board's Motion in Limine (Court Doc. 249). FRE 403; cumulative, |
| 59. | Emails between OJA and MCCOYS re the removal of juveniles from MCJDC after Billy's death. <br><br> Bates: MCCOYS 806-809 | *** **OBJECTION SUSTAINED** *** <br><br> Objection based on the Court's ruling during the Pre-trial Conference on Defendant Board's Motion in Limine (prohibiting evidence/testimony re breach of contract) (Court Doc. 249).. FRE 401-403, 407, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, subsequent remedial measures, authenticity. |
| 60. | Detention Services Claim – January 2017 | *** **OBJECTION SUSTAINED** *** <br><br> Objection. FRE 401-403,407, 801-803, 901; relevance, unfairly prejudicial, misleading the jury, confusing the issues, wasting time, cumulative, hearsay, subsequent remedial measures, authenticity. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |
| 61. | Emails between OCA and OJA re training requirements | |

| 62. | Letter from Washington to OJA (Fields) re Camera System | *** OBJECTION SUSTAINED *** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. |
|---|---|---|
| 63. | MCCOYS Strategic Planning Staff Questionnaire – October 2016. | |
| 64. | Vinnie Payton Hoover Suicide Statistics | |
| 65. | Muskogee EMS Records (Selected) | *** OBJECTION OVERRULED IF LAST 2 PAGES OF EXHIBIT REMOVED *** <br><br> Objection to Muskogee EMS 14 to Muskogee EMS 15 and Muskogee EMS 35-36 because the Court ruled at the 9-19-19 Pretrial Conference that Muskogee EMS records for non-suicide/suicide attempts are not admissible(FRE 401-403, 801-803, 901; relevance, unduly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity) |
| 66. | 9-1-1 Call on May 26, 2014 re Suicide Attempt at MCJDC (Audio Recording) | |
| 67. | Documents concerning the May 26, 2014 suicide attempt at MCJDC by juvenile "M. P."_Redacted | *** OBJECTION OVERRULED *** <br><br> Objection to MCCOYS 883, MCCOYS 886FRE 401-403, 801-803, 901; relevance, unduly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |
| 68. | 9-1-1 Call on June 2, 2014 re Suicide Attempt at MCJDC (Audio Recording) | |
| 69. | Records concerning the June 2, 2014 suicide attempt at MCJDC by juvenile "M. S." (redacted) | *** OBJECTION OVERRULED *** <br><br> Objection. FRE 401-403, 801-803, 901; relevance, unduly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial |

| | | |
|---|---|---|
| | | disclosures and/or filings. |
| 70. | OJA Letter to Washington informing him of upcoming inspection – January 15, 2013 | *** **OBJECTION OVERRULED** ***<br><br>Objection. FRE 401-403, 801-803, 901; relevance, unduly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. Not previously identified by Plaintiff as a potential exhibit in earlier pre-trial disclosures and/or filings. |
| 71. | Goble letter to Washington re only taking Muskogee Residents at facility – April 17, 2014. | |
| 72. | 2011 OJA-OPI Assessment Report Documents from OJA | |
| 73. | 2012 OJA-OPI Assessment Report Documents from OJA | |
| 74. | 2013 OJA-OPI Assessment Report Documents from OJA | |
| 75. | 2014 OJA-OPI Assessment Report Documents from OJA | |
| 76. | 2015 OJA-OPI Assessment Report Documents from OJA | |
| 77. | 2016 OJA-OPI Assessment Report | |
| 78. | 2016 MCJDC Utilization Rates | *** **EXHIBIT WITHDRAWN** ***<br><br>Objection. FRE 401-403, 801-803, 901; relevance, unduly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. |
| 79. | DHS-OCA Report to DA – Juvenile "N.S."_(redacted) | *** **OBJECTION SUSTAINED** ***<br><br>Objection. FRE 401-403, 801-803, 901; relevance, unduly prejudicial, misleading the jury, confusing the issues, wasting time, hearsay, authenticity. |
| * | Demonstrative Exhibit from Summary Jury Trial | |
| * | Any Exhibit Listed by Defendants and Not Objected to by Plaintiff. | |

### B. Defendant's Exhibits

| Description | Objections |
|---|---|
| 1. Contract between MCCOYS and the Board, dated June 27, 2016. Plaintiff's Exhibit No. 28 in depositions (MCCOYS 366-370) (previously the Board's exhibit 45) | |
| 2. Detention Services Agreement between Board and MCCOYS, | |

| | |
|---|---|
| approved June 20, 2016 (DDR 38, 1-5) | |
| 3. Fiscal Year 2015 Affidavit of Assignment to MCCOYS (DDR 38, 148) | |
| 4. Fiscal Year 2016 Affidavit of Assignment to MCCOYS (DDR 38, 150) | |
| 5. Fiscal Year 2017 Affidavit of Assignment to MCCOYS (DDR 38, 152) | |
| 6. Letter from Office of Juvenile Affairs to the Board regarding Renewal Change Order for Fiscal Year 2017 and attachments (previously the Board's exhibits 6-8) (DDR 38, 17-21) | **\*\*\* OBJECTION OVERRULED \*\*\***<br><br>Contains irrelevant information. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. |
| 7. Contracts between MCCOYS and various counties (51) to house those counties' juveniles at the Regional Juvenile Detention Center (DDR 38, 238-493) (previously Board's exhibit 9) | **\*\*\* OBJECTION OVERRULED \*\*\***<br><br>256 page Exhibit. Description of Exhibit does not comply with Court's instructions in form (does not identify specific pages to be presented at trial). Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. |
| 8. MCCOYS' Policies and Procedures for the Regional Juvenile Detention Center (DDR 38, 153- 220) (previously Board's exhibit 10) | |
| 9. MCCOYS' training folder given to Jerrod Lang (previously the Board's exhibits 11-12) (Lang 1-151) (previously Boards exhibit 11 & 12) | |
| 10. MCCOYS' training materials for Regional Juvenile Detention Center staff (MCCOY 371 – 411) (previously Board's exhibit 13) | |
| 11. Office of Juvenile Affairs cover letter and Assessment Report of the Regional Juvenile Detention Center for 2012 (MCCOYS 417-421) (previously Board's exhibit 14 & 19) | |
| 12. Office of Juvenile Affairs cover letter and Assessment Report of the Regional Juvenile Detention Center for 2013 (MCCOYS 422- 426) (previously Board's exhibit 15 & 20) | |
| 13. Office of Juvenile Affairs- cover letter and Assessment Report | |

| | |
|---|---|
| of the Regional Juvenile Detention Center for 2014 (MCCOYS 427- 431) (previously Board's exhibit 16 & 21) | |
| 14. Office of Juvenile Affairs cover letters and Assessment Report of the Regional Juvenile Detention Center for 2015 DDR 38, 70-75 & MCCOYS 432-437) (previously Board's exhibit 17 & 22) | |
| 15. Office of Juvenile Affairs- Assessment Report of the Regional Juvenile Detention Center for 2016 (DDR 38, 65-69) (previously Board's exhibit 18 & 23) | |
| 16. Permanent Certificate from Office of Juvenile Affairs to Board to operate a Juvenile Detention Center, effective until September 2016 (previously Board's exhibit 24) | |
| 17. Permanent Certificate from Office of Juvenile Affairs to Board to operate a Juvenile Detention Center, effective until May 2018 (previously Board's exhibit 25) | |
| 18. MCCOYS' personnel file/training records for Marietta Winkle (MCCOYS 574-624) (previously Board's exhibit 26) | |
| 19. MCCOYS' personnel file/training records for Jerrod Lang (MCCOYS 625-668) (previously Board's exhibit 27) | |
| 20. MCCOYS' personnel file/training records for Brandon Miller (MCCOYS 537-573) (previously Board's exhibit 28) | |
| 21. MCCOYS' personnel file/training records for Angela Miller (MCCOYS 490-536) (previously Board's exhibit 29) | |
| 22. Pertinent records from PO-01-137-Delaware County, including, but not limited to, the petition for protective order, emergency and/or temporary protective orders, and minutes from court proceedings (previously Board's exhibit 30) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.  Improper character evidence.  FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 23. Pertinent records from CV-01-374-Delaware County, including, but not limited to, the petition, answer, orders, temporary restraining order, court minutes, contempt citation, bench warrant (previously Board's exhibit 31) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.  Improper character evidence.  FRE 404. Unauthenticated. Hearsay. FRE 801, 802. |

| | No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
|---|---|
| 24. Pertinent criminal records from CF-16-527, Stephens County, including, but not limited to, the information, any plea, sentencing or revocation documents. (previously Board's exhibit 32) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence.   FRE   404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 25. Pertinent records from PO-15-1926-Oklahoma County, including, but not limited to, the petition for protective order, emergency and/or temporary protective orders, and minutes from court proceedings(previously Board's exhibit 33) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence.   FRE   404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 26. Pertinent Office of Juvenile Affairs records regarding Decedent's criminal history (previously Board's exhibit 34) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence.   FRE   404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 27. Pertinent juvenile delinquency records from JDL-15-5 and JDL-15-6, Cherokee County, including, but not limited to, the delinquent petition, any plea, court minutes/hearing transcripts, transport orders, detention orders, and sentencing, release, or revocation documents (previously Board's exhibit 35) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character   evidence.   FRE   404. |

| | Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
|---|---|
| 28. Cherokee County Sheriff's Office Uniform Incident/Offense report dated January 5, 2015 reporting Decedent violated program rules and court order (previously Board's exhibit 36) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.  Improper character evidence.  FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 29. Cherokee County Sheriff's Office Uniform Incident/Offense report dated January 27, 2015 reporting Decedent wrote threatening letter (previously Board's exhibit 37) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.  Improper character evidence.  FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 30. Pertinent records related to Decedent's application to transfer services from Arkansas to Oklahoma via the Interstate Compact for Juveniles (previously Board's exhibit (previously Board's exhibit 38) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.  Improper character evidence.  FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 31. Pertinent juvenile delinquency records from J-15-541-D, Benton County, Arkansas, including, but not limited to, the delinquent petition, any plea, court minutes/hearing transcripts, transport orders, detention orders, and sentencing, release, or revocation documents (previously Board's exhibit 39) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.  Improper |

| | |
|---|---|
| | character evidence. FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 32. Pertinent juvenile delinquency records from J-15-554-D, Benton County, Arkansas, including, but not limited to, the delinquent petition, any plea, court minutes/hearing transcripts, transport orders, detention orders, and sentencing, release, or revocation documents (previously Board's exhibit 40) | *** **OBJECTION SUSTAINED** *** <br><br> Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence. FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 33. Pertinent Benton County Juvenile Probation Office records regarding Decedent's criminal history (previously Board's exhibit 41) | *** **OBJECTION SUSTAINED** *** <br><br> Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence. FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 34. Muskogee County Sheriff's Office-Muskogee County Detention Center book-in and Medical Questionnaire dated December 14, 2016 (previously Board's exhibit 42) | *** **OBJECTION SUSTAINED** *** <br><br> Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence. FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. |
| 35. Pertinent juvenile delinquency records from Muskogee County related to Arkansas's warrant hold on Decedent, including, but not limited to, court minutes/hearing transcripts, transport orders, and detention orders (previously Board's exhibit 43) | *** **OBJECTION SUSTAINED** *** <br><br> Irrelevant. FRE 401, 402.  Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.   Improper character evidence. FRE 404. |

| | Unauthenticated. Hearsay. FRE 801, 802. No foundation. |
|---|---|
| 36. City of Muskogee Police Department records regarding Decedent's arrest on December 14, 2016 (previously Board's exhibit 41) | **\*\*\* OBJECTION SUSTAINED \*\*\***<br><br>Irrelevant. FRE 401, 402. Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. Improper character evidence. FRE 404. Unauthenticated. Hearsay. FRE 801, 802. No foundation. Inadmissible evidence of a criminal conviction. FRE 609. |
| 37. DDR 38, 39 organizational chart of MCCOYS (previously Board's exhibit 46) | **\*\*\* OBJECTION OVERRULED \*\*\***<br><br>Irrelevant. FRE 401, 402. Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. |
| 38. RJDC Staff Meeting and Training Minutes for 1-9-16 to 12-16-16 (MCCOYS 440-459) (From Plaintiff's Exhibit 35 in Washington's Deposition) | |
| 39. OPI's 2-24-12 RJDC Assessment materials (OJA 365-406)(Received from OJA on 2-26-19 per Plaintiff's Subpoena) | |
| 40. OPI's 2-11-13 RJDC Assessment materials (OJA 412-439) (Received from OJA on 2-26-19 per Plaintiff's Subpoena) | |
| 41. OPI's 4-02-14 RJDC Assessment materials (OJA 452-479) (Received from OJA on 2-26-19 per Plaintiff's Subpoena) | |
| 42. OPI's 3-23-15 RJDC Assessment materials (OJA 562-596) (Received from OJA on 2-26-19 per Plaintiff's Subpoena) | |
| 43. Memo from Darryl Fields to Travis Kirkpatrick dated 9-9-15 (OJA 597-598) (Received from OJA on 2-26-19 per Plaintiff's Subpoena) | |
| 44. Youth Services Certificate 1988 (MCCOYS 0880) (Exhibit 26 to MCCOYS' Motion for Summary Judgement) | **\*\*\* OBJECTION OVERRULED \*\*\***<br><br>Irrelevant. FRE 401, 402. Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. |

| | |
|---|---|
| 45.  RJDC Critical Incident Report to OJA 6-18-16 (OJA 629) (Received from OJA on 2-26-19 per Plaintiff's Subpoena) | |
| 46.  Vinnie Payton-Hoover Training Materials (MCCOYS 857-860 & 861-877) (Produced by MCCOYS in Discovery and used in Ms. Hoover's Deposition) | **\*\*\*  OBJECTION OVERRULED IF DX46 MADE SAME AS PX64 \*\*\***<br><br>Description of Exhibit does not comply with Court's instructions in form (does not identify specific pages to be presented at trial). Contains irrelevant information. FRE 401, 402.    Any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. |
| 47.    (Unredacted) Muskogee EMS records for Decedent (Received from EMS per Plaintiff's Subpoena) | |
| 48.  Muskogee Police Department body camera footage (Received from Muskogee Police Department per Plaintiff's subpoena on February 28, 2019) | |
| 49.   Email from B. Helm to T. Riley attaching Dr. Ryan Brown and Amy Bateman emails (Produced by Plaintiff on February 27, 2019 after receipt from Dr. Brown) | **\*\*\* EXHIBIT WITHDRAWN \*\*\***<br><br>Hearsay. FRE 801, 802.  Improper Expert Opinion. FRE 701, 702. No foundation. Unauthenticated. |
| 50. MCCOYS' "Staff Rules and Security Practices" for the Regional Juvenile Detention Center (pages 11-18 of Defendant's Exhibit #10 (above); MCCOY 381-388) | |
| 51. All exhibits listed by Plaintiff not otherwise objected to by this Defendant at pre-trial or trial. (previously Board's exhibit 48) | |

| Defendant Board's Demonstrative Exhibits[2] | |
|---|---|
| **Description** | **Objections** |
| 1. The following, highlighted portions of MCCOYS' Policies and Procedures for the Regional Juvenile Detention Center manual: cover page, table of contents, *Room Confinement* policy, *Staffing Standards* policy, *Medical* policy, *Health Care* policy, *Suicide Prevention and Control* policy, and *Juvenile Rights* policy (from Defendant's Exhibit #8, pp. 1-3, 17-18, 21-22, 25 & 29; DDR 38, 153-155, 169-170, 173-174, 177, & 181) | |
| 2. MCCOYS' "Staff Rules and Security Practices" for the Regional Juvenile Detention Center (highlighted) (from | |

---

[2] These "demonstrative exhibits" are listed herein as suggested by the Court at the previous Pretrial Conference on September 19, 2019 (Doc. 247).

| | |
|---|---|
| Defendant's Exhibit #10, pp. 11-18; MCCOY 381-388) | |
| 3. Heartsaver First Aid, CPR, AED, and Child CPR and AED Certification Card for Marietta "Jackie" Winkle (from Defendant's Exhibit #18, p. 14; MCCOYS 587) | |
| 4. Muskogee County 73 First Aid, CPR, AED, and Child CPR and AED Certification and Heartsaver First Aid, CPR, AED, and Child CPR and AED Certification Card for Jerrod Lang (from Defendant's Exhibit #19, pp. 7-9; MCCOYS 631-633) | |
| 5. BasicPlus First Aid, CPR, and AED Certification Card for Brandon Miller, effective October 26, 2016-October 26, 2018 (from Defendant's Exhibit #20, p. 3; MCCOYS 539) | |
| 6. Heartsaver First Aid, CPR, AED, and Child CPR and AED Card for Angela Miller, effective January 22, 2015-January 2017 (from Defendant's Exhibit #21, p. 46; MCCOYS 535) | |
| 7. Regional Juvenile Detention Center Daily Schedule/Program Description (from Plaintiff's Exhibit #13, "Intake, Admission and Visitation Documents from Billy's MCJDC file"; MCCOYS 30) | |
| 8. Regional Juvenile Detention Center Layout/Evacuation Plan (from Plaintiff's Exhibit #13, "Intake, Admission and Visitation Documents from Billy's MCJDC file"; MCCOYS 31) | |
| 9. Photo without CJPG (Dr. Reames' Demonstrative Exhibit) | |
| 10. Photo of skull and spine (Dr. Reames' Demonstrative Exhibit) | |

## IX.      The following witnesses will be called:

### A.          Plaintiffs' Witnesses

| No. | Name | Subject of Information |
|---|---|---|
| 1. | Brandon Miller c/o James L. Gibbs, II GPHG, PC 701 N. Broadway Ave., Suite 400 Oklahoma City, OK 73102 | Defendant Brandon Miller would be expected to testify regarding the following subjects: the facts and circumstances surrounding Billy Woods' arrest, booking and detention at Muskogee County Juvenile Detention Center ("MJDC"), Mr. Woods' behavior, communications and demeanor at MJDC, Mr. Woods' mental state at MJDC, the treatment and supervision of Mr. Woods at MJDC, medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, and other incidents at MJDC.  Mr. Woods' suffering death. |
| 2. | Marietta Winkle c/o James L. Gibbs, II GPHG, PC 701 N. Broadway Ave., Suite 400 Oklahoma City, OK 73102 | Defendant Marietta Winkle would be expected to testify regarding the following subjects: the facts and circumstances surrounding Billy Woods' arrest, booking and detention at Muskogee County Juvenile Detention Center ("MJDC"), Mr. Woods' behavior, communications and demeanor at MJDC, Mr. Woods' mental state at MJDC, the treatment and supervision of Mr. Woods at MJDC, medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, and other incidents at MJDC.  Mr. Woods' suffering and death. |

| 3. | Jerrod Lang<br>c/o Thomas A. LeBlanc<br>BEST & SHARP<br>Woods Center Tower 1<br>One West Third Street, Suite 900<br>Tulsa, OK 74103 | Defendant Jerrod Lang would be expected to testify regarding the following subjects: the facts and circumstances surrounding Billy Woods' arrest, booking and detention at Muskogee County Juvenile Detention Center ("MJDC"), Mr. Woods' behavior, communications and demeanor at MJDC, Mr. Woods' mental state at MJDC, the treatment and supervision of Mr. Woods at MJDC, medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, and other incidents at MJDC. Mr. Woods' suffering and death. |
| --- | --- | --- |
| 4. | Angela Miller<br>c/o James L. Gibbs, II<br>GPHG, PC<br>701 N. Broadway Ave., Suite 400<br>Oklahoma City, OK 73102 | Defendant Angela Miller would be expected to testify regarding the following subjects: the facts and circumstances surrounding Billy Woods' arrest, booking and detention at Muskogee County Juvenile Detention Center ("MJDC"), Mr. Woods' behavior, communications and demeanor at MJDC, Mr. Woods' mental state at MJDC, the treatment and supervision of Mr. Woods at MJDC, medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, and other incidents at MJDC. Mr. Woods' suffering and death. |
| 5. | Ross Miller, M.S.<br>Office of the Chief Medical Examiner<br>901 N. Stonewall Ave.<br>Oklahoma City, OK 73117<br>(405) 239-7141 | As the physician that performed the autopsy of Billy Woods, Dr. Ross Miller would be expected to give testimony, including expert opinion testimony, on the following subjects: any subject relating to the autopsy of Billy Woods, including but not limited to, Mr. Woods' cause of death, the circumstances of his death, external evidence of any medical therapy, Mr. Woods' health status at the time of his death, any evidence of injury, and toxicology analysis. |
| 6. | Joe Washington<br>c/o Randall J. Wood<br>PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P.<br>1109 N. Francis<br>Oklahoma City, OK 73106 | Mr. Washington, as the facility director/Superintendent at MJDC, would be expected to give testimony on the following subjects: the policies and procedures at MJDC, including training, supervision, and staffing;  the investigation into the death of Billy Woods and the Facility response to Woods' medical emergency;  other incidents at MJDC; lay opinion testimony concerning the treatment of Billy Woods and whether that treatment comports with policies. |
| 7. | Don Johnson<br>Muskogee Police Department<br>112 S. 3rd Street<br>Muskogee, OK 74401<br>(918) 680-3117 | *May Call.* Officer Don Johnson is a Criminal Investigator for the Muskogee Police Department ("MPD") who responded to the scene after Defendants called 9-1-1 following Billy Woods' death. Officer Johnson would be expected to give testimony about the following subjects: the scene of Mr. Woods' death. Officer Johnson might also be called upon to authenticate photographs of the scene. |
| 8. | Dr. Ryan Brown<br>940 NE 13th<br>Oklahoma City, OK 73104<br>(405) 271-2421 | *By Deposition Designation.* Dr. Ryan Brown is on the Child Protection Committee at Children's Hospital in Oklahoma City, OK. Dr. Brown analyzed the photographs taken at the scene of Billy Woods' death and the Medical Examiner's report. As such, Dr. Brown would be expected to give testimony, including |

| | | expert opinion testimony, about the following subjects: the facts and circumstances surrounding Mr. Woods' death. |
|---|---|---|
| 9. | Special Agent Jeremy Yerton Oklahoma State Bureau of Investigation 6600 North Harvey Pl. Oklahoma City, OK 73116 (405) 848-6724 | *May Call.* Special Agent Yerton conducted several interviews in connection with the Oklahoma Depart of Human Services' ("OKDHS") investigation into Billy Woods' death. Special Agent Yerton may have information about the following subjects: the facts and circumstances of Billy Woods' death and any information obtained during OSBI/OKDHS' investigation. |
| 10. | Shannon Iwanski 1530 East 58th Street Tulsa, OK 74105 | Shannon Iwanski was the lead investigator for OKDHS' investigation into Billy Woods' death. Mr. Iwanski would be expected to testify concerning that investigation, his findings and conclusions. Iwanski would be called upon to authenticate the investigative report and related materials. |
| 11. | Jeremy Evans, Program Manager of OJA c/o Jacqueline Zamarripa Oklahoma Attorney General's Office Litigation Section 313 NE 21st Street Oklahoma City, OK 73105 (405) 521-3921 | *May Call.* As Program Manager of OJA, Jeremy Evans may have information on the following subjects: OJA's 2015 regional contract including two one-year options to rnew for FY 2016 and FY 2017 with the Board of Muskogee County Commissioners, BOCC and MCCOYS compliance with rules contractual requirements, the policies, procedures and practices in place at the OJA, the investigation into Woods' death, and the termination of MCCOYS. |
| 12. | Cindy Perkins c/o Randall J. Wood PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P. 1109 N. Francis Oklahoma City, OK 73106 | Ms. Perkins was at all pertinent times the Executive Director of MCCOYS. She would be expected to testify concerning MCCOYS and County programs, policies, procedures, customs and training. Ms. Perkins would also testify regarding the training and supervision of MCCOYS employees, or lack thereof. Perkins may testify concerning the contractual relationship with BOCC and BOCC's role with respect to the MJDC. Perkins may testify concerning Woods' death and other incidents. Perkins may give lay opinion testimony concerning the compliance, or lack thereof, with MCCOYS or County policies. |
| 13. | Kenny Payne c/o Andy A. Artus Jamison C. Whitson Taylor M. Tyler COLLINS, ZORN & WAGNER 429 N.E. 50th, Second Floor Oklahoma City, OK 73105 | Kenny Payne is a County Commissioner with the Muskogee County Board of County Commissioners. Payne would likely testify concerning the BOCC, contract with MCCOYs, oversight and supervision of MCCOYs and MJDC by BOCC, policies (including training), customs and practices of BOCC and MCCOYS, death of Woods and other incidents. |
| 14. | Patty Reece c/o Randall J. Wood PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P. 1109 N. Francis | Patty Reece would be expected to testify regarding the following subjects: MCCOYS' resident programs, or lack thereof; medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, and other incidents at MJDC. |

|    | Oklahoma City, OK 73106 | |
|----|----|----|
| 15. | Vinnie Payton Hoover<br>1721 Bell Road<br>Fort Gibson, OK 74434 | *May Call.* Ms. Hoover would be expected to testify regarding training and programs at MJDC concerning mental health and suicide prevention. |
| 16. | Peter Ash, M.D.<br>P.O. Box 15315<br>Atlanta, Georgia 30333-5315<br>(404) 727-3244 | *By video trial deposition.* Retained Expert Witness.  Dr. Ash is a forensic psychiatrist. Dr. Ash will give expert opinion testimony concerning the treatment of Billy Woods, the standard of care, causation and training. |
| 17. | Richard Childs<br>c/o Bonnie L. Clift<br>Deputy General Counsel, OKDHS<br>P.O. Box 25352<br>Oklahoma City, OK 73125<br>(405) 521-3638 | *May Call.* Richard Childs spoke with Mr. Woods on the day of his death and may testify concerning that conversation, the scope of that conversation and the limitations of Childs' role in dealing with Billy Woods. |
| 18. | Evelyn Hibbs<br>c/o Randall J. Wood<br>PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P.<br>1109 N. Francis<br>Oklahoma City, OK 73106 | *May Call.* Evelyn Hibbs, as Chairman of the MCCOYS Board of Directors, may have relevant information concerning MCCOYS and the BOCC. |
| 19. | Anthony Cornwell<br>c/o Randall J. Wood<br>PIERCE COUCH HENDRICKSON BAYSINGER & GREEN, L.L.P.<br>1109 N. Francis<br>Oklahoma City, OK 73106 | Anthony Cornwell, as a MJDC Shift Supervisor who was working during Billy Woods detention, would be expected to testify regarding the following subjects: the facts and circumstances surrounding Billy Woods' arrest, booking and detention at Muskogee County Juvenile Detention Center ("MJDC"), Mr. Woods' behavior, communications and demeanor at MJDC, Mr. Woods' mental state at MJDC, the treatment and supervision of Mr. Woods at MJDC, medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, and other incidents at MJDC |
| 20. | Ken Doke<br>c/o Andy A. Artus<br>Jamison C. Whitson<br>Taylor M. Tyler<br>COLLINS, ZORN & WAGNER<br>429 N.E. 50th, Second Floor<br>Oklahoma City, OK 73105 | Ken Doke is a County Commissioner with the Muskogee County Board of County Commissioners.  Would likely testify concerning the BOCC, contract with MCCOYs, oversight and supervision of MCCOYS and MJDC by BOCC, policies (including training), customs and practices of BOCC and MCCOYS, death of Woods and other incidents. |
| 21. | Stephen Wright<br>c/o Andy A. Artus<br>Jamison C. Whitson<br>Taylor M. Tyler<br>COLLINS, ZORN & WAGNER | Stephen Wright is a County Commissioner with the Muskogee County Board of County Commissioners.  Would likely testify concerning the BOCC, contract with MCCOYs, oversight and supervision of MCCOYs and MJDC by BOCC, policies (including training), customs and practices of BOCC and |

| | | |
|---|---|---|
| | 429 N.E. 50th, Second Floor<br>Oklahoma City, OK 73105 | MCCOYS, death of Woods and other incidents. |
| 22. | Dorothy Brown<br>c/o Randall J. Wood<br>PIERCE COUCH<br>HENDRICKSON<br>BAYSINGER & GREEN, L.L.P.<br>1109 N. Francis<br>Oklahoma City, OK 73106 | Dorothy Brown, as a MJDC Detention Worker who was working during Billy Woods' detention, would be expected to testify regarding the following subjects: the facts and circumstances surrounding Billy Woods' arrest, booking and detention at Muskogee County Juvenile Detention Center ("MJDC"), Mr. Woods' behavior, communications and demeanor at MJDC, Mr. Woods' mental state at MJDC, the treatment and supervision of Mr. Woods at MJDC, medical treatment and/or policies, procedures and customs at MJDC, general policies, procedures and customs at MJDC, training and supervision, the filling out of MJDC forms and logs, and other incidents at MJDC. |
| 23. | Travis Kirkpatrick, OJA Administrator, Office of Public Integrity<br>c/o Jacqueline Zamarripa<br>Oklahoma Attorney General's Office<br>Litigation Section<br>313 NE 21st Street<br>Oklahoma City, OK 73105<br>(405) 521-3921 | *May Call.* As OJA Administrator, Office of Public Integrity, Travis Kirkpatrick may have information on the following subjects: OJA's 2015 regional contract including two one-year options to renew for FY 2016 and FY 2017 with the Board of Muskogee County Commissioners, BOCC and MCCOYS compliance with rules contractual requirements, the policies, procedures and practices in place at the OJA, the investigation into Woods' death, and the termination of MCCOYS. |
| 24. | Ron Morris<br>Muskogee County EMS<br>200 Callahan Street<br>Muskogee, OK 74403 | *May Call.* Authenticate Muskogee County EMS records (Plaintiff's Exhibits 4 and 65). |
| 25. | Austin P. Bond<br>c/o Daniel Smolen<br>Smolen & Roytman<br>701 S. Cincinnati<br>Tulsa, OK 74119<br>(918) 585-2667 | *May Call.* May be called to testify as to matters related to the administration of the Estate. |
| 26. | Records Custodian from the Muskogee Police Department | Authenticate records from the Muskogee Police Department. |
| * | Any witness listed by Defendant and not objected to by Plaintiff. | |
| * | Any witness needed to authenticate documents. | |

      **B.**      **Defendant's Witnesses**

| *Witnesses Defendant Will Call* | | |
|---|---|---|
| **No.** | **Name, Address and Telephone No.** | **Proposed Testimony** |

| 1. | Kenny Payne<br>c/o Andy Artus, Mike Carr, & Taylor Riley<br>COLLINS, ZORN 7 WAGNER, P.C.<br>429 N.E. 50th, Second Floor<br>Oklahoma City, OK 73105<br>(405) 524-2070 | Will testify that the Regional Juvenile Detention Center ("RJDC") was operated and maintained at all relevant times by MCCOYS. Will authenticate and discuss the contracts between the Board and MCCOYS, including any Affidavit of Assignment to MCCOYS. Will be able to testify as to OJA's inspections of the RJDC and that the Board was not aware of any problems with MCCOYS' running of RJDC. Will authenticate County documents or documents received by the County. Will authenticate any letters received by the Board from the Office of Juvenile Affairs ("OJA"). Will testify regarding all aspects of his deposition. |
|---|---|---|
| 2. | Joe Washington<br>2753 N. Edmond St.<br>Muskogee, OK 74403<br>(918) 683-0173 | Will testify to and authenticate MCCOYS Policies and Procedures for RJDC. Will authenticate and discuss letters sent to him from OJA containing OJA's inspections of RJDC. Will authenticate and discuss MCCOYS' training materials and training and supervision of MCCOYS' staff at the RJDC. Will discuss the RJDC monthly staff meetings and authenticate related records. Will authenticate and discuss Jerrod Lang, Angela Miller, Brandon Miller, and Marietta Winkle's personnel files, training and training records, and supervision. Will testify regarding staffing levels at RJDC. Will also testify regarding all aspects of his deposition. |
| 3. | Cindy Perkins<br>MCCOYS<br>4009 Eufaula Ave.<br>Muskogee, OK 74403<br>(918) 682-2841 | Will testify to and authenticate MCCOYS' Policies and Procedures for RJDC. Will and discuss MCCOYS' training materials and training of RJDC staff. Will authenticate and discuss the contracts between the Board and MCCOYS, including any Affidavit of Assignment to MCCOYS. Will authenticate and discuss the contracts between MCCOYS and other counties to house juveniles at RJDC. Will testify regarding MCCOYS' receipt directly from OJA, per contract, of monies for the housing of juveniles at the RJDC and authenticate related records. Will authenticate and discuss the OJA inspections of RJDC. Will authenticate and discuss Jerrod Lang, Angela Miller, Brandon Miller, and Marietta Winkle's personnel files, training and training records, and supervision. Will authenticate and discuss MCCOYS' organization chart and that RJDC was operated and maintained at all times by MCCOYS. That MCCOYS is a Youth Services Agency and what that means. Will testify regarding staffing levels at RJDC. Will also testify regarding all aspects of her deposition. |
| 4. | Jeremy Evans<br>c/o Jackie Zamarippa & Richard Mann<br>OKLAHOMA ATTORNEY | Will testify regarding critical incidents that occurred at the RJDC (if any) prior to the incident at issue. Will authenticate Office of Juvenile affairs records related |

| | | |
|---|---|---|
| | GENERAL'S OFFICE<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105<br>(405) 521-4518 | to any critical incidents at RJDC prior to the incident in this case and any communications he had with the Board regarding any prior critical incidents. Any notice of any problems by MCCOYS' running of RJDC prior to the incident involving Decedent, Billy Woods. |
| 5. | Travis Kirkpatrick<br>c/o Jackie Zamarippa & Richard Mann<br>OKLAHOMA ATTORNEY<br>GENERAL'S OFFICE<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105<br>(405) 521-4518 | Will testify regarding annual assessments of RJDC by the Office of Public Integrity ("OPI") division of OJA. Will authenticate and discuss the annual inspections of RJDC, including the materials reviewed in its inspection. Will testify regarding OPI's review of MCCOYS' Policies and Procedures for the RJDC, training materials, and other records during its annual assessment of the RJDC. Will authenticate and discuss OJA documents relating to RJDC's newly-constructed building, which was where Decedent was housed when he died. |
| 6. | Richard Childs<br>c/o Jackie Zamarippa & Richard Mann<br>OKLAHOMA ATTORNEY<br>GENERAL'S OFFICE<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105<br>(405) 521-4518 | Billy Woods' Juvenile Case Worker. All his knowledge of Billy Woods and Woods's mental condition and where Woods was in the juvenile process. Will authenticate records related to Decedent's court proceedings in Muskogee County, including his contact notes regarding Decedent and records related to Decedent returning to Arkansas. Will also testify regarding all aspects of his deposition. |
| 7. | Ron Copelan<br>c/o Jackie Zamarippa & Richard Mann<br>OKLAHOMA ATTORNEY<br>GENERAL'S OFFICE<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105<br>(405) 521-4518 | His knowledge of the Juvenile system and where Billy Woods was in the system. Will testify that the Muskogee County Regional Detention Center is one of 17 Regional Taskforce Centers state wide. Juveniles from the Counties that contracted with MCCOYS were given beds on a first-come first-serve basis and that OJA paid 85% of an established "detention right" per juvenile to MCCOYS directly. |
| 8. | Brandt Hiler[3]<br>6013 S. 1st St. W.<br>Muskogee, OK 74401<br>(918) 568-9476 | His knowledge, training, and experience. Will authenticate EMS records regarding Decedent and discuss his observations on the scene and his care provided. Authenticate his voice on the Muskogee County Police Department body camera video and discuss the level of rigor mortis Decedent had at the time of his arrival. Will testify regarding his knowledge of rigor mortis, generally, and how long it takes for Decedent's level of rigor mortis to set in. |
| 9. | Steven Buck<br>Care Providers Oklahoma<br>1201 North Harvey Avenue<br>Oklahoma City, Oklahoma 73103<br>(405) 524-8338 | His knowledge, education, and experience. Will testify regarding the Office of Juvenile Affairs' role and responsibility in detaining juveniles in the State of Oklahoma. Will testify regarding Defendant Board's role in contracting with MCCOYS to run RJDC and MCCOYS' history with OJA. Will authenticate Office |

---

[3] Plaintiff notes the Court's ruling that Hiler will not be permitted to provide expert testimony. *See* Dkt. #241.

| | | of Juvenile Affairs documents and records, including but not limited to: OJA's assessments of RJDC including materials reviewed in those assessments; purchase orders between MCCOYS and OJA; letters sent to/from OJA; permanent certificates issued to RJDC; and the youth services certificate issued to MCCOYS. Will also authenticate records created and/or received by OJA related to Decedent, including Decedent's juvenile and/or JOLTS profiles, records pertaining to the JDL-15-5 and JDL-15-6 proceedings against Decedent and related Cherokee County incident reports, records pertaining to Decedent's transfer of services between Oklahoma and Arkansas. Will also testify regarding all aspects of his deposition. |
|---|---|---|
| 10. | Vinnie Payton Hoover<br>1721 Bell Road<br>Fort Gibson, Oklahoma 74434<br>(918) 682-9103 | Her knowledge, education, and experience. Will testify regarding: the training and supervision of MCCOYS' staff and programs; her contract with MCCOYS; suicide risk training and assessment. Will authenticate training materials she used to train RJDC staff. Will also testify regarding all aspects of her deposition. |
| 11. | Dr. Richard M. Hough, Sr.[4]<br>University of West Florida<br>Department of Criminology and Criminal Justice, and Department of Administration and Law<br>Building 85, Room 160<br>11000 University Parkway<br>Pensacola, FL 32514<br>(850) 474-2336 | Will testify regarding his education, training, and experience; will testify as to the adequacy of the juvenile detention center's policies, training, and staffing, and all aspects of his report. Will authenticate his report. Will testify regarding all aspects of his video trial deposition. |
| 12. | Dr. Jeff Reames, M.D., MBA, FACEP[5]<br>Vice-President of Emergency Medicine<br>Mercy Health System<br>4300 W. Memorial Road<br>Oklahoma City, OK 73120<br>(405) 752-3030 | Will testify regarding his education, experience, and training; will testify to his review of the exhibits in this case and his opinions as to whether Billy Woods could be resuscitated, the method used and manner of death, length of time it took Billy Woods to end his own life, and all aspects of his report. Will authenticate his report. Will testify regarding all aspects of his video trial deposition. |
| 13. | Samantha Mahler<br>7521 E. 613 | Decedent's mother.[6] Will testify regarding and may authenticate records relating to her criminal history, |

---

[4] In the event this trial is continued past July 7, 2020, and if Dr. Hough is unavailable for said continued trial date, then his testimony will be presented by video trial deposition, (*See* Court Docs. 259, 262, 267).

[5] In the event this trial is continued past July 7, 2020, and if Dr. Reames is unavailable for said continued trial date, then his testimony will be presented by video trial deposition, (*See* Court Docs. 259, 262, 267).

[6] Defendant Board previously served Ms. Mahler with a subpoena to appear and testify at the June 2, 2020 trial. Defendant Board has been attempting to serve Ms. Mahler with a subpoena to appear and testify for the July 7, 2020 trial but has, to date, been unsuccessful since Ms. Mahler is apparently avoiding service. In the event Defendant could not obtain good service on Ms. Mahler assuring her live testimony at the July 7, 2020 trial, then it intended to present her testimony by (previously submitted) deposition designation, (*See* Court Docs. 259, 262,

| | | |
|---|---|---|
| | Peggs, OK 74452<br>(918) 581-3034 | court filings made by or against her, and Decedent's upbringing. That she was in jail when Billy Woods was arrested. All aspects of Billy Woods running away and her relationship with Heath Woods. Will testify regarding and may authenticate Oklahoma Department of Human Services records related to her and/or her children. Will testify regarding and may authenticate records relating to Decedent's child welfare history and criminal and juvenile delinquency history. Will also testify regarding all aspects of her deposition. |
| 14. | Heath Brandon Woods<br>8772 Pageant Drive<br>Rogers, AR 72756<br>(479) 717-2206 | Decedent's father.[7] Will testify regarding and may authenticate records relating his criminal history, court filings made by or against him, and Decedent's upbringing. That he could no longer allow Bill Woods in his house. His relationship with Billy Woods and Samantha Mauler. Will testify regarding and may authenticate Oklahoma Department of Human Services records related to him and/or his children. Will testify regarding and may authenticate records relating to Decedent's child welfare history and criminal and juvenile delinquency history. Will also testify regarding all aspects of his deposition. |
| 15. | Jerrod Lang<br>P.O. Box 144<br>Boynton, OK 74422<br>(918) 310-5568 | Staff member at RJDC. Will testify regarding the facts and circumstances surrounding Decedent's intake and detention at RJDC. Will testify regarding his interactions with Decedent, Decedent's intake at RJDC, Decedent's communications, Decedent's behavior, his knowledge of Decedent's mental state, and Decedent's death. Will testify regarding his observation of Decedent's body, finding Decedent's body, and the facts and circumstances surrounding the aftermath of Decedent's death. Will testify regarding his training, knowledge of MCCOYS' policies and procedures, and job duties at RJDC. Will authenticate his personnel file, training records, and the training folder given to him by MCCOYS. Will testify regarding all aspects of his deposition. |
| 16. | Marietta Winkle<br>417795 E. 1040 Rd.<br>Checotah, OK 74426<br>(918) 843-1602 | Staff member at RJDC. Will testify regarding the facts and circumstances surrounding Decedent's intake and detention at RJDC. Will testify regarding her interactions with Decedent, Decedent's intake at RJDC, Decedent's communications, Decedent's behavior, her knowledge of Decedent's mental state, |

267); but see the Court's ruling at Court Doc. 285.

[7] Defendant Board served Mr. Woods with a subpoena to appear and testify at the July 7, 2020 trial. Defendant Board believes Mr. Woods is within the subpoena power of this Court, because while he does live in Arkansas, he also works within one-hundred (100) miles of this Court. In the event Mr. Woods still failed to appear for the July 7, 2020 trial, then Defendant Board intended to present Mr. Woods' testimony by (previously submitted) deposition designation, (*See* Court Docs. 259, 262, 267); but see the Court's ruling at Court Doc. 285.

| | | and Decedent's death. Will testify regarding her observation of Decedent's body and the facts and circumstances surrounding the aftermath of Decedent's death. Will testify regarding her training, knowledge of MCCOYS' policies and procedures, and job duties at RJDC. Will authenticate her personnel file, and training records. Will testify regarding all aspects of his deposition. |
|---|---|---|
| 17. | Brandon Miller<br>656 N. 13th St.<br>Muskogee, OK 74401<br>(918) 899-2501 | Staff member at RJDC. Will testify regarding the facts and circumstances surrounding Decedent's intake and detention at RJDC. Will testify regarding his interactions with Decedent, Decedent's intake at RJDC, Decedent's communications, Decedent's behavior, his knowledge of Decedent's mental state, and Decedent's death. Will testify regarding his observation of Decedent's body, finding Decedent's body, and the facts and circumstances surrounding the aftermath of Decedent's death. Will testify regarding his training, knowledge of MCCOYS' policies and procedures, and job duties at RJDC. Will authenticate his personnel file and training records. Will testify regarding all aspects of his deposition. |
| 18. | Angela Miller<br>4812 Blue Ridge Ct.<br>Muskogee, OK 74403<br>(918) 360-7658 | Staff member at RJDC. Will testify regarding the facts and circumstances surrounding Decedent's intake and detention at RJDC. Will testify regarding her interactions with Decedent, Decedent's intake at RJDC, Decedent's communications, Decedent's behavior, her knowledge of Decedent's mental state, and Decedent's death. Will testify regarding her observation of Decedent's body and the facts and circumstances surrounding the aftermath of Decedent's death. Will testify regarding her training, knowledge of MCCOYS' policies and procedures, and job duties at RJDC. Will authenticate her personnel file, and training records. Will testify regarding all aspects of his deposition. |
| 19. | Austin P. Bond[8]<br>c/o Daniel Smolen<br>Smolen Smolen & Roytman<br>701 S. Cincinnati<br>Tulsa, OK 74119<br>(918) 585-2667 | Will testify as to his knowledge of the allegations made in this lawsuit and to all aspects of his trial deposition. |
| 20. | Records custodian from the Oklahoma Department of Human Services | Will authenticate documents. |
| 21. | Records Custodian (probably Karolina Boulet) from the Muskogee County Detention Center/Sheriff's Office. | Authenticate Decedent's Book-in Sheet and Medical Questionnaire. |

---

[8] *See* this Court's Order at Court Doc. 274 substituting Austin P. Bond as the Plaintiff in this action.

| 22. | Records Custodian from the Muskogee Police Department | Authenticate records from the Muskogee Police Department. |
|---|---|---|
| 23. | Any necessary records custodian or witness to authenticate documents | To Authenticate documents. |
| 24. | Any witness listed by Plaintiff and not objected to by Defendant at Pre-Trial or Trial. | |

| | Witnesses Defendant May Call | |
|---|---|---|
| **No.** | **Name, Address and Telephone No.** | **Proposed Testimony** |
| 1. | Ken Doke, County Commissioner for Muskogee County c/o Andy Artus, Mike Carr, & Taylor Riley COLLINS, ZORN 7 WAGNER, P.C. 429 N.E. 50th, Second Floor Oklahoma City, OK 73105 (405) 524-2070 | Will testify that the Regional Juvenile Detention Center ("RJDC") was operated and maintained at all relevant times by MCCOYS. Will authenticate and discuss the contracts between the Board and Office of Juvenile Affairs ("OJA") and the Board and MCCOYS. May be able to testify as to OJA's inspections of the RJDC. Lack of knowledge of deficiencies by MCCOYS prior to the incident in this case. |
| 2. | Stephen Wright, County Commissioner for Muskogee County c/o Andy Artus, Mike Carr, & Taylor Riley COLLINS, ZORN 7 WAGNER, P.C. 429 N.E. 50th, Second Floor Oklahoma City, OK 73105 (405) 524-2070 | Will testify that the Regional Juvenile Detention Center ("RJDC") was operated and maintained at all relevant times by MCCOYS. Will authenticate and discuss the contracts between the Board and Office of Juvenile Affairs ("OJA") and the Board and MCCOYS. May be able to testify as to OJA's inspections of the RJDC. Will testify regarding all aspects of his deposition. Lack of knowledge of deficiencies by MCCOYS prior to the incident in this case. |
| 3. | Dr. Ryan Brown University of Oklahoma, Health Sciences Center 940 13th St. Oklahoma City, OK 73104 (405) 271-2429 | His knowledge, education, and experience. Will testify regarding his examination of the Medical Examiner's Report and photographs taken of Woods. Will testify regarding his opinion regarding the facts, circumstances, and cause of Decedent's death. Will testify regarding all aspects of his deposition. Will authenticate his email to Amy Bateman. |
| 4. | Don Johnson Muskogee Police Department 112 S. 3rd Street Muskogee, OK 74401 (918) 680-3117 | His knowledge, training, and experience. Will testify regarding the scene of Decedent's death, his investigation of Decedent's death, and his opinion regarding whether any criminal acts (as they relate to Decedent's death) occurred. Will authenticate Muskogee Police Department records regarding Decedent, including body camera footage from City of Muskogee Police Officers regarding the scene of Decedent's death. |
| 5. | Steven Warrior Muskogee Police Department 112 S. 3rd Street Muskogee, OK 74401 (918) 680-3117 | His knowledge, training, and experience. Will testify regarding the facts and circumstances surrounding Decedent's arrest and transfer to MJDC and Decedent's health and mental state at the time of his arrest. |

| | | |
|---|---|---|
| 6. | D. Wisdom<br>Muskogee Police Department<br>112 S. 3rd Street<br>Muskogee, OK 74401<br>(918) 680-3117 | His knowledge, training, and experience. Will testify regarding the facts and circumstances surrounding Decedent's arrest and transfer to MJDC and Decedent's health and mental state at the time of his arrest. |
| 7. | Anthony Cornwell<br>P.O. Box 955<br>Haskell, OK 74436<br>(918) 482-5830 | MCCOYS employee who worked at RJDC. Will testify regarding the facts and circumstances surrounding Decedent's intake and detention at RJDC. Will testify regarding his interactions with Decedent, Decedent's communications, Decedent's behavior, his knowledge of Decedent's mental state, and Decedent's death. Will testify regarding his training, knowledge of MCCOYS' policies and procedures, and job duties at RJDC. Will testify regarding all aspects of his deposition. |
| 8. | Dorothy Brown<br>P.O. Box 163<br>Council Hill, OK 74428<br>(918) 910-5131 | MCCOYS employee who worked at RJDC. Will testify regarding her training, knowledge of MCCOYS' policies and procedures, and job duties at RJDC. Will testify regarding all aspects of her deposition. |
| 9. | Andrew Swann<br>131 Turman St.<br>Rainbow City, AL 35906<br>(256) 442-2014 | OJA Caseworker for Decedent in November of 2016. May testify regarding Decedent's status and participation in OJA program, Decedent's relationship with his family, and Decedent's juvenile charges. May testify to authenticate OJA documents. |
| 10. | Jennifer Flint<br>800 N. Anderson Rd.<br>Choctaw, OK 73020<br>(405) 476-8538 | OJA Caseworker for Decedent in November of 2016. May testify regarding Decedent's status and participation in OJA program, Decedent's relationship with his family, and Decedent's juvenile charges. May testify to authenticate OJA documents. |

**X.      Discovery has been completed.  The discovery cutoff in this case was March 1, 2019.**

However, BOCC took the deposition of successor Plaintiff, Austin Bond on June 26, 2020 (prior to trial).

**XI.      Indicate all pending motions and the corresponding dates of filing.**

The parties filed Supplemental and/or Amended Jury Instructions (Court Docs. 286 and 288), which the Court ordered must be filed at least ten (10) days before any trial date (*See* Court Doc. 247).

Should a jury render judgment in Plaintiff's favor, then Defendant Board anticipates filing a Motion and Brief seeking disclosure of Plaintiffs settlement agreements (and amounts) with previous defendants in this suit, pursuant to an appropriate Protective Order entered by this Court, and a Motion and Brief seeking a settlement credit or an offset pursuant to 12 O.S. § 832 (H) and/or federal common law.

**XII.      The parties agree the following issues of law, and no others, remain to be litigated upon the trial: (Here set forth a concise statement of each.  Disregard the effects of any pending motions.)**

**Parties may not submit separate issues of law. <u>Identify any pending motions which encompass and correspond to an issue of law.</u>**

**A.      Agreed**

1.      Whether there was an underlying constitutional violation by an agent of the Board.

**B.   Plaintiff's Statement of Additional Issues of Law**

1.      Whether the BOCC/Muskogee County is ultimately responsible for the care, treatment and protection of juveniles held in the MJDC.

2.      Whether Billy Woods, as a pretrial detainee, possessed a Constitutional right to be free from deliberate indifference to his health and safety.

3.      Whether Woods' Constitutional rights included a right to humane conditions of confinement, including adequate medical and mental health care and reasonable safety from serious bodily harm.

4.      Whether under the Fourteenth Amendment due process clause, as a pretrial detainee, Woods was entitled to the degree of protection against denial of medical and mental health attention, and protection of from bodily harm, which applies to convicted inmates under the Eighth Amendment.

5.      Whether BOCC was Constitutionally required to make available to Woods a level of medical and mental health care which was reasonably designed to meet his routine and emergency health care needs.

6.      Whether BOCC was Constitutionally required to make available to Mr. Woods a level of medical care which was reasonably designed to meet his routine and emergency health care needs.

7.      Whether Mr. Woods' Constitutional right to adequate medical care included a right to adequate mental health care.

8.      Whether contracting with MCCOYS relieves BOCC of its constitutional duty to provide adequate medical care and protection from bodily injury to juveniles in its custody at MJDC.

9.      Whether Plaintiff is entitled to an award of reasonable attorney fees under 42 U.S.C. § 1988.

**B.   Defendant's Statement of Additional Issues of Law**

1.   If there was an underlying constitutional violation by an agent of the Board, whether that constitutional violation was caused by the policy, custom, or widespread and persistent practice of the Board.

2.   If there was an underlying constitutional violation that was caused by the policy, custom, or practice, of the Board, was that violation so likely to have occurred that the Board was deliberately indifferent.

3.   Whether the Board was aware of problems with MCCOYS' operation of the RJDC, such that it rises to the level of deliberate indifference.

4.   Whether MCCOYS was an agent of the Board and if so, whether MCCOYS' employees were agents of the Board.

5.   Whether the Board is entitled to a set-off.

**XIII.**     **The Court's Rulings on Motions in Limine, Daubert Motions, Briefs concerning deposition designations, and Briefs concerning settlement evidence at the September 19, 2019 and June 26, 2020 Pretrial Conferences[9]**

The Court made the following rulings on the Board's Motions in Limine (Court Doc. 249):

1. The Court GRANTED Defendant Board's Motion in Limine I, pursuant to Rule 403, because the Office of Child Advocacy investigation made normative or opinion-based findings concerning the underlying events at issue based on the "some credible evidence" standard without any cross-examination or hearing (a.k.a., without sufficient indicia of reliability). Therefore, the following evidence may not be submitted as evidence, or testified about during the trial of this matter: the Office of Child Advocacy Report; the Office of Child Advocacy's investigation (to include what was learned by the Office of Child Advocacy during said investigation); corresponding documents, evidence, and interviews to the Office of Child Advocacy's investigation and/or report.

It is Plaintiff's view that factual findings from the Office of Child Advocacy Report may still be referred to, in appropriate circumstances (i.e., where those findings have been admitted to by the witness during deposition testimony), for the purposes of impeachment and as a basis for Dr. Ash's opinion under Rule 703. Defendant Board objects to such uses of the Office of Child Advocacy Report at trial as same are contrary to the letter and spirit of this Court's previous rulings on the matter (*see, e.g.* Court Doc. 249), improper and/or inadmissible under the Federal Rules of Evidence (*see, e.g.*, 401-402, 608, 612-613, 703, 705, and Defendant's objections already stated to Plaintiff's Exhibits 7-8, 26-30, and 34-38 as well as Plaintiff's other OCA-related exhibits), are prejudicial to Defendant (*see* Fed. R. Evid. 403, 703) and also for those reasons already discussed in detail in Defendant's Motion in Limine and supporting Reply (*see* Court Docs. 171 and 218).

2. The Court GRANTED Defendant Board's Motion in Limine III. Therefore, the following may not be discussed, mentioned, submitted as evidence, or testified about during the trial of this matter: evidence and testimony regarding any alleged "breach of contract" by Defendant Board as it relates to its contract with the Office of Juvenile Affairs. The Court did not rule that the Contract itself is inadmissible or that Plaintiff cannot elicit testimony concerning the contract. Rather, the Court found that laywitnesses could not opine as to any "breach of contact" as such testimony is an impermissible legal conclusion.

3. The Court DENIED Defendant Board's Motion in Limine IV—evidence regarding policy, standard, rule, or regulation violations. However, the Court cautioned that not every alleged violation will be permitted.

4. The Court GRANTED IN PART Defendant Board's Motion in Limine V. Therefore, the following may not be discussed, mentioned, submitted as evidence, or testified about during the trial of this matter: whether any Muskogee County Commissioner sat on or was a part of the MCCOYS Board of Directors. The Motion is DENIED with respect to the question of whether there was a BOCC liaison who served on the MCCOYS Board.

---

[9] This section does not include those subjects which were deemed moot because of the parties' agreement; those are addressed in Section IV of this Pretrial Order.

5. The Court DENIED Defendant Board's Motion in Limine VII—evidence regarding the Muskogee County Regional Juvenile Detention Center being short-staffed.

6. The Court GRANTED IN PART Defendant Board's Motion in Limine IX. Therefore, the following may not be discussed, mentioned, submitted as evidence, or testified about during the trial of this matter: evidence and testimony regarding Muskogee EMS Records and 911 calls.  The Motion was DENIED with respect to Muskogee EMS Records records/911 calls relating to Billy Woods' death or the 2014 suicide attempts at the Muskogee County Regional Juvenile Detention Center.

7. The Court GRANTED Defendant Board's Motion in Limine X. Therefore, the following may not be discussed, mentioned, submitted as evidence, or testified about during the trial of this matter: the Medical Examiner's Report regarding Billy Woods.

8. The Court DENIED Defendant Board's Motion in Limine XI.C—evidence regarding pecuniary damages and damages regarding Billy Woods' physical pain, severe emotional distress, mental anguish, and death.

9. The Court GRANTED IN PART Defendant Board's Motion in Limine XIX. Therefore, the following may not be discussed, mentioned, submitted as evidence, or testified about during the trial of this matter: opinions or questions of witnesses about the truthfulness or honesty of other witnesses EXCEPT where a proper foundation has been laid.

10. The Court GRANTED Defendant Board's Motion in Limine XX. Therefore, the following may not be discussed, mentioned, submitted as evidence, or testified about during the trial of this matter: counsel's opinion.

11. The Court DENIED Defendant Board's Motion in Limine XXI—hypothetical questions by counsel.

12. The Court RESERVED RULING on Defendant Board's Motion in Limine XXIII—referencing or otherwise suggesting/implying that the jury should "send a message" with their verdict or other similar remarks.

13. The Court GRANTED IN PART Plaintiff's Motion in Limine. Therefore, Brandt Hiler may not provide expert opinion testimony, but may testify that Billy Woods had rigor mortis/lividity and his knowledge of same (including how long it takes for rigor mortis/lividity to set in) in order to lay a foundation regarding the rigor mortis/lividity he observed in Billy Woods.

The Court made the following rulings regarding Plaintiff's expert witness, Dr. Peter Ash (Court Doc. 173):

1.  Evidence and/or testimony regarding Dr. Ash's opinions about what Billy Woods may have done, during the suicide process, and how long that may have taken, are EXCLUDED because they are speculative and irrelevant.

2. Evidence and/or testimony regarding Dr. Ash's opinions about any verbal abuse of Billy Woods by Muskogee County Regional Juvenile Detention Center staff and any alleged effect on Woods' mentality are EXCLUDED under FRE 403.

3. Evidence and/or testimony regarding Dr. Ash's opinions about whether MCCOYS' policy required Woods to be on suicide watch and/or that MCCOYS' employees testified Woods should have been on suicide watch is NOT EXCLUDED.

At the June 26, 2020 Pretrial Conference, the Court also made the following rulings:

1. The Court construed Plaintiff's objections to the deposition designations of Heath Woods and Samantha Mahler as a motion in limine (Court Doc. 263), which the Court GRANTED (*See* Court Doc. 285).

2. The Court GRANTED Defendant Board's Brief regarding admitting into evidence the fact of former codefendants' settlement with plaintiff at trial, (Court Doc. 275), ruling Defendant Board could introduce the fact of its former codefendants' (MCCOYS, Steven Buck, Jerrod Lang, Angela Miller, Brandon Miller, and Marietta Winkle) had been sued by Plaintiff in this lawsuit and have settled with Plaintiff. However, the terms of the settlement agreement(s) and settlement amount(s) are not to be mentioned or discussed.

3. The Court GRANTED IN PART Plaintiff's Motion for Leave to file Angela Miller's deposition designations out of time (Court Doc. 277), ruling Plaintiff may file the deposition designations but could not introduce Angela Miller's testimony regarding knowledge of 5 and/or 15 minute checks (See Court Doc. 285).

**XIV.    The possibility of settlement of this case has been explored with the following results:**

Plaintiff has previously settled with all Defendants except for BOCC.  The parties are discussing settlement, but settlement seems unlikely at this juncture.

**XV.    Do all counsel and parties consent to a Magistrate Judge handling the jury selection in this matter (if a jury demand has been made)?  If yes, all counsel should be prepared to sign a consent form at the Pretrial Conference.**

Yes __X____      No _

**XVI.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, <u>this order shall supersede the pleadings and govern the course of the trial of this cause,</u> unless modified to prevent manifest injustice.  Rule 16, <u>Federal Rules of Civil Procedure</u>.**

Dated this 6th day of July, 2020.

_Ronald A. White_

RONALD A. WHITE,
UNITED STATES DISTRICT JUDGE

**Approved as to form and content:**


/s/Robert M. Blakemore
Daniel E. Smolen, OBA #19943
danielsmolen@ssrok.com
Robert M. Blakemore, OBA #18656
bobblakemore@ssrok.com
Bryon D. Helm, OBA #33003
bryonhelm@ssrok.com
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
Phone:  (918) 585-2667
Fax:  (918) 585-2669

***ATTORNEYS FOR PLAINTIFFS***


s/ Andy A. Artus
Andy A. Artus, OBA No. 16169
Michael L. Carr, OBA No. 17805
Jamison C. Whitson, OBA No. 18490
Taylor M. Riley, OBA No. 33291
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th, Second Floor
Oklahoma City, OK  73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
Email: jcw@czwlaw.com
          aaa@czwlaw.com
          mlc@czwlaw.com
          tmr@czwlaw.com

*Attorneys for Defendant Board of*
*Commissioners of Muskogee*
*County, Oklahoma*