**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AUSTIN P. BOND, as Special Administrator of the Estate of BILLY WOODS, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 18-CV-108-RAW |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | |
| BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT BOARD'S BRIEF REGARDING MUNICIPAL LIABILITY**
**AND CONTRACTUAL DUTIES/VIOLATIONS (DKT. # 313)**

COMES NOW, the Plaintiff, Austin P. Bond, as the Special Administrator of the Estate of Billy Woods ("Billy" or "Mr. Woods"), deceased, and respectfully submits his Response in Opposition to Defendant Board of County Commissioners of Muskogee County's ("BOCC" or "Board") "Brief Regarding Municipal Liability and Contractual Duties/Violations" (Dkt. #313), as follows:

**Introductory Statement**

During trial of this matter, counsel for BOCC has repeatedly averred, claimed and implied that by entering into a subcontract with Muskogee County Council of Youth Services ("MCCOYS"), BOCC delegated, or even abdicated, its duty to supervise the operation of the Muskogee County Regional Juvenile Detention Center ("Facility" or "MCJDC"). In large part, BOCC has defended this case by arguing that any violation of Billy Woods' Constitutional rights was MCCOYS' fault and cannot be laid at the feet of the Board. In doing so, BOCC has taken great pains to distance itself, factually and legally, from MCCOYS. In essence, it is BOCC's

1

position that because it entered a subcontract with MCCOYS, the Board cannot be held liable for any failure to supervise or train MCCOYS employees staffed at the MCJDC.

As one of its contentions, as stated in the Pretrial Order, BOCC asserts that "neither" MCCOYS "nor its employees (including Jerrod Lang, Brandon Miller, Angela Miller, and Marieta Winkle) were Defendant Board's agents." Dkt. #294 at 7.  Similarly, BOCC lists "[w]hether MCCOYS was an agent of the Board and if so, whether MCCOYS' employees were agents of the Board" as an "issue of fact" to be decided by the jury. *Id.* at 13.

By defending this case in such a manner, BOCC has placed its contractual relationships, as well as its statutory duties, as they pertain to MCJDC, directly at issue. It is well established that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their [Constitutional] rights." *West v. Atkins,* 487 U.S. 42, 56 (1988).  Despite this authority, BOCC has denied any responsibility for the unconstitutional conduct of its subcontractor's employees. Under these circumstances, Plaintiff must be permitted put on evidence showing that BOCC contractually agreed, and was statutorily obligated, to retain numerous duties and responsibilities related to the basic safety and well-being of juveniles housed at the Facility. BOCC's arguments to the contrary lack merit.

## Discussion

In its Brief, BOCC first complains that Plaintiff has "directed the jury's attention to various provisions in the "Regional Secure Detention" contract between Defendant Board and the Office of Juvenile Affairs (Plaintiff's Exhibit 52), including the contractual provision that '[t]he existence of a subcontract shall not relieve Contractor of any responsibility for performing the Contract.'" Dkt. #313 at 1.  BOCC argues that "the Board's contractual duties to OJA are irrelevant to this suit and further is **[sic]** misleading, prejudicial, and likely to confuse the jury and therefore should

not be allowed under Fed. R. Evid. 401 and 403." *Id.* at 3. The Court should reject these arguments on at least two grounds.

**First,** BOCC has waived its objections to Plaintiff's Exhibit 52. Though labeled a "Brief", said "Brief" is really an untimely motion *in limine*. During the Pretrial Conference in this matter, BOCC withdrew its objections to the "OJA Contract" (Plaintiff's Exhibit 52), with the exception of its insistence that Plaintiff redact (in white) certain references to liability insurance coverage. Based on this exchange, the Court overruled Defendant's objections so long as Plaintiff redacted the subject allusions to insurance from the OJA Contract. *See* Pretrial Order (Dkt. #294) at 20. Plaintiff has since redacted the identified references to liability insurance, and Plaintiff's Exhibit 52 has been admitted into evidence. In addition, the Court previously declined to "rule that the [OJA] Contract itself is inadmissible or that Plaintiff cannot elicit testimony concerning the contract." *Id.* at 44. BOCC should not be permitted now, long after the deadline for motions *in limine* has passed, and after withdrawing its objections under Rules 401, 402 and 403, to object to the admission of Plaintiff's Exhibit 52. Any such objection has been waived.

**Second,** even assuming that BOCC has not waived its objections to the OJA Contract, its evidentiary objections lack merit. The OJA Contract is relevant and admissible.

As the Court is well aware, Plaintiff's claims against BOCC are brought pursuant to a municipal liability theory. Typically, courts will not hold a municipality liable without proof of an "underlying constitutional violation by [one] of its officers." *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317−18 (10th Cir. 2002). As stated above, it is BOCC position that "neither" MCCOYS "nor its employees (including Jerrod Lang, Brandon Miller, Angela Miller, and Marieta Winkle) were Defendant Board's agents." Dkt. #294 at 7. In other words, BOCC asserts that it cannot be held liable pursuant to a municipal liability theory because the alleged "underlying violators" were employees of a subtractor and were not the Board's subordinate officers.

3

As initial matter, BOCC's argument in this regard is facially contrary to federal law. It is well-established that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). *See also Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("[W]here the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment."). The OJA Contract further negates BOCC's "agency" defense and is probative of Plaintiff's "underlying violation" allegations.

Plaintiff's municipal liability theory is also bolstered by the OJA Contract -- and applicable State law -- in other respects. For instance, 10A Okla. Stat. § 2-3-103(C)(2) provides that: "[t]he board of county commissioners of every county shall provide for the temporary detention of a child who is or who may be subject to secure detention and may construct a building or rent space for such purpose. The boards of county commissioners shall provide for temporary detention services and facilities in accordance with the provisions of the State Plan for the Establishment of Juvenile Detention Services…." With respect to "subcontracting," the contract between OJA and BOCC provides that **"[t]he existence of a subcontract shall not relieve Contractor [i.e., BOCC] of any responsibility for performing the [OJA] Contract."** *See* OJA Contract (Plaintiff's Exhibit 52) at 0007 (emphasis in original). The OJA Contract further specifies that ***BOCC "and any subcontractors*** shall comply with all applicable state and federal laws including any regulations and rules…" and "[o]bservance of and compliance with these requirements shall be the ***sole responsibility of [BOCC]***, without reliance on or direction by OJA." *Id.* at 0009 (emphasis added). The Contract additionally requires BOCC to "develop and implement a training program in accordance with the standards and requirements of OAC 377:3-

4

13-43, *et seq.*, for all facility staff." *Id.* at 0015. The referenced OAC 377:3-13-43(8) mandates that "[a]ll staff shall be trained on facility policy and procedure…", including "orientation before being allowed to work independently….." *Id.* at 0035.

These provisions of the OJA Contract, and others, severely undermine BOCC's argument that there was no agency relationship with MCCOYS and its employees. The OJA Contract also strongly supports Plaintiff's position that BOCC retained responsibility for ensuring the Facility was operated in a Constitutional manner and that the staff were properly trained and supervised.

The OJA Contract likewise undercuts BOCC's defense that it was not "deliberately indifferent" to the health and safety of juveniles housed at the Facility. As the Tenth Circuit has held and reasoned, in the municipal liability context, "[t]he deliberate indifference standard may be satisfied when the municipality has actual or ***constructive*** notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998). As the *Barney* Court explained:

> Deliberate indifference … is defined differently for Eighth Amendment and municipal liability purposes. In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the official. ***In the municipal liability context, deliberate indifference is an <u>objective</u> <u>standard</u> which is satisfied if the risk is so obvious that the official <u>should</u> have known of it.***

*Barney,* 143 F.3d at 1308, n. 5 (citations omitted) (emphasis added). *See also Layton v. Bd. of Cty. Comm'rs of Oklahoma Cty.,* 512 F. App'x 861, 868, n. 5, 869-70 (10th Cir. 2013); *Cash v. Cty. of Erie,* 654 F.3d 324, 341, n. 8 (2d Cir. 2011) ("[F]or purposes of establishing municipal liability, deliberate indifference is an objective standard that is satisfied if the risk is so obvious that the official should have known of it."). BOCC's non-delegable duties, as set out in the OJA Contract, support the proposition that, the Board knew or *"should have known"* of obvious and substantial risks to juvenile

residents like Billy Woods.[1]

Plainly, the OJA Contract is highly relevant, in multiple respects, to Plaintiff's municipal liability theory against BOCC. Contrary to BOCC's contention, Plaintiff's use of PX52 is *not* a mere "attempt to substitute vicarious liability and/or contractual duty for the requisite municipal liability standard…." Dkt. #313 at 4. And the probative value of the OJA Contract is not substantially outweighed by a danger of unfair prejudice, confusing the issues or misleading the jury. Rather, the OJA Contract will greatly assist the jury in clarifying the issues of agency and municipal liability, despite BOCC's efforts to muddy the waters.

The Court's prior decision to admit Plaintiff's Exhibit 52 into evidence should not be disturbed.

Respectfully submitted,

SMOLEN & ROYTMAN

/s/ Robert M. Blakemore
Robert M. Blakemore, OBA #18656
Daniel E. Smolen, OBA #19943
Bryon D. Helm, OBA #33003
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
bobblakemore@ssrok.com
danielsmolen@ssrok.com
bryonhelm@ssrok.com

**Attorneys for Plaintiff**

---

[1]     The Tenth Circuit has emphasized that "[t]he official's knowledge of the risk need not be knowledge of a substantial risk to a particular inmate, or knowledge of the particular manner in which injury might occur." *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008). *See also Farmer v. Brennan,* 511 U.S. 825, 843 (1994) (finding liability even though the prison official "did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault").

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of July 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/ Robert M. Blakemore