# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUSTIN P. BOND, as Special Administrator of the Estate of BILLY WOODS, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA,<br><br>Defendant. | Case No.: 18-CV-108-RAW |

## PLAINTIFF'S BENCH BRIEF REGARDING THE COURT'S DRAFT JURY INSTRUCTIONS

COMES NOW, the Plaintiff, Austin P. Bond, as the Special Administrator of the Estate of Billy Woods ("Billy" or "Mr. Woods"), deceased, and respectfully submits his Bench Brief Regarding the Court's Draft Jury Instructions. More specifically, this Brief addresses the Court's draft jury instructions concerning "Policy, Practice or Custom – Defined" and "Deliberate Indifference – The County", as follows:

### A. Policy, Practice or Custom and the "Single Violation" Doctrine

The draft jury instruction regarding "Policy, Practice or Custom – Defined", pertinently reads as follows:

> "Proof of a single isolated incident or random act of a constitutional violation is not sufficient to establish that an unconstitutional policy or custom of the County existed. Rather, to demonstrate liability based on an un-official practice or custom, Plaintiff must show numerous particular instances of similar unconstitutional conduct within a relatively short amount of time."

1

*See* Draft Jury Instructions at 34.  In the next draft instruction concerning "Policy or Custom of Failure to Train and/or Supervise" (*id.* at 35), which Plaintiff does not challenge, the Court makes no mention of a "numerous particular instances of similar unconstitutional conduct" requirement.

Plaintiff respectfully suggests that the draft jury instruction regarding "Policy, Practice or Custom – Defined", as written, may confuse the jury. Plaintiff's municipal liability theory in this case is based, almost exclusively, on evidence of a failure to train and/or supervise.  It is well-established that "evidence of a *single violation of federal rights*, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Allen v. Muskogee, Okl.,* 119 F.3d 837, 842 (10th Cir. 1997) (citing *Board of County Com'rs v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)) (emphasis added). *See also Hinkle v. Beckham Cty. Bd. of Cty. Commissioners,* 962 F.3d 1204 (10th Cir. 2020) (holding that even though the plaintiff had "not pointed out a pattern of tortious conduct" the case "falls within the 'narrow range of circumstances' in which it was 'plainly obvious' that the County's policy of strip searching all detainees would result in a detainee being needlessly body-cavity strip searched").

Plaintiff humbly asserts that the "Policy, Practice or Custom – Defined" instruction should account for this "single violation" doctrine.

In *Allen*, the Tenth Circuit concluded that the plaintiff's claim came "within the 'narrow range of circumstances' recognized by *Canton* and left intact by *Brown*, under which a single violation of federal rights may be a highly predictable consequence [of a municipality's action or inaction]." *Allen*, 119 F.3d at 845.  The *Allen* Court found that the record "support[ed] an inference that the City trained its officers to leave cover and approach armed suicidal, emotionally disturbed persons and to try to disarm them[.]" *Id.* at 843. After receiving that training, police officers

2

approached Terry Allen's vehicle—where a suicidal and armed Allen sat with a leg out the window—and attempted to wrestle his gun from him. *Id.* at 839. Shots were then exchanged and Allen was hit four times and killed. *Id.* Because "officers will frequently have to deal with armed emotionally upset persons" and the City's training amplified the possibility "of a violent response," the Tenth Circuit concluded that "the City's failure to properly train its officers reflected deliberate indifference to the obvious consequence of the City's choice." *Id.* at 845.

In this case, Plaintiff has put on overwhelming evidence of a woeful failure to train and supervise detention staff with respect to suicide assessment and prevention policies and procedures, as well as emergency medical protocols. Clearly, detention workers at the Muskogee County Regional Detention Center would "frequently have to deal" with children at heightened risk of suicide, like Billy Woods. The blatant and widespread failure to train and supervise under such circumstances, despite the absence of a pattern of tortious conduct, constitutes deliberate indifference to the obvious consequences of the County's/MCCOYS' failure to act.

The facts in the case at bar are similar to those in another case where the "single violation" doctrine was invoked, *Woodward v. Corr. Med. Servs. of Illinois, Inc.,* 368 F.3d 917 (7th Cir. 2004).[1] *Woodward* involved the suicide -- by hanging with a bedsheet -- of a 23-year-old pretrial detainee named Justin Farver. The plaintiff brought Fourteenth Amendment claims against the medical provider ("CMS"), pursuant to § 1983, based on a municipal liability theory. After the plaintiff obtained a favorable jury verdict, CMS filed unsuccessful post-trial motions and then appealed. One of CMS's primary arguments on appeal was that "plaintiff's failure to introduce evidence of any suicide at the Lake County jail besides Farver's dooms plaintiff's efforts to prove a custom or

---

[1] Although this case and *Woodward* are certainly similar, the failure to train and supervise in the case at bar is actually far more severe than what is reflected by the evidence in *Woodward.*

3

practice." *Woodward,* 368 F.3d at 929. In soundly rejecting this argument, the Seventh Circuit held and reasoned:

> ***CMS does not get a "one free suicide" pass. The Supreme Court has expressly acknowledged that evidence of a single violation of federal rights can trigger municipal liability if the violation was a "highly predictable consequence" of the municipality's failure to act.*** *See Bd. of Cty. Comm'rs of Bryan Cty.,* 520 U.S. at 409, 117 S.Ct. 1382. Here, there was a direct link between CMS's policies and Farver's suicide. That no one in the past committed suicide simply shows that CMS was fortunate, not that it wasn't deliberately indifferent. Moreover, we note that CMS's liability is based on much more than a single instance of flawed conduct, such as one poorly trained nurse. It was based on repeated failures to ensure Farver's safety—by Dean, by Mollner, and by Dr. Fernando—as well as a culture that permitted and condoned violations of policies that were designed to protect inmates like Farver.

*Id.* (emphasis added).

Similarly, the County should not be given a "one free suicide" pass in this case. Here, there is a direct link between the County's/MCCOYS' policies -- particularly the fragrant failure to train with respect to suicide assessment and precaution -- and Billy's suicide. And the County's liability is "based on much more than a single instance of flawed conduct, such as one poorly trained" detention worker. The evidence, put on through the testimony of supervisors, administrators and line staff alike, shows a "culture that permitted and condoned violations of policies that were designed to protect inmates like" Billy Woods.[2]

---

[2]  For instance, the staff meeting minutes (PX39) establish that, for an extended period of time, detention workers, and even shift supervisors, were not receiving required training, not supervising the juvenile residents and not sharing vital information at shift change. Rather than take any remedial action, the leadership at the Facility ratified these policy violations by promoting unqualified personnel and even falsifying training records. It was in this atmosphere that an unqualified and untrained staff member like Jerrod Lang became a shift supervisor and was put into a position of overseeing suicidal youth without the slightest idea of how to assess, let alone prevent, a catastrophe like Billy's suicide.

4

In sum, Plaintiff urges the Court to include language in the "Policy, Practice or Custom – Defined" Jury Instruction which reflects the "single violation" doctrine as articulated in *Allen*, *Woodward* and *Brown*.

### B.  "Deliberate Indifference" at the County Level

The Court's draft jury instruction regarding "Deliberate Indifference – The County" correctly states that the *mens rea* requirement may be established through evidence of "constructive knowledge". Draft Jury Instructions at 37. Plaintiff's only concern is that, without more, the jury may lack sufficient understanding of what is intended by "constructive" knowledge. As the Tenth Circuit has explained:

> Deliberate indifference … is defined differently for Eighth Amendment and municipal liability purposes. In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the official. ***In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it.***

*Barney v. Pulsipher,* 143 F.3d 1299, 1308, n. 5 (10th Cir. 1998) (citations omitted) (emphasis added). *See also Layton v. Bd. of Cty. Comm'rs of Oklahoma Cty.*, 512 F. App'x 861, 868, n. 5, 869-70 (10th Cir. 2013); *Cash v. Cty. of Erie,* 654 F.3d 324, 341, n. 8 (2d Cir. 2011) ("[F]or purposes of establishing municipal liability, deliberate indifference is an objective standard that is satisfied if the risk is so obvious that the official should have known of it.").

Plaintiff believes it would be helpful to the jury to include language clarifying that it may find the requisite deliberate indifference based on evidence that the risks to juveniles like Billy were "so obvious that the [County] should have known of" them.

Respectfully submitted,

SMOLEN & ROYTMAN

/s/Robert M. Blakemore
Robert M. Blakemore, OBA #18656

5

Daniel E. Smolen, OBA #19943
Bryon D. Helm, OBA #33003
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
bobblakemore@ssrok.com
danielsmolen@ssrok.com
bryonhelm@ssrok.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/ Robert M. Blakemore