IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUSTIN P. BOND, as Special Administrator of the Estate of BILLY WOODS, deceased,<br><br>     Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA,<br><br>     Defendant. | Case No. 18-CIV-108-RAW |

## INSTRUCTIONS TO THE JURY

## <u>OPENING INSTRUCTIONS</u>

MEMBERS OF THE JURY:

Now that you have heard all of the evidence, it becomes my duty to give you the instructions of the court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you and to apply that law to the facts as you find them from the evidence in the case.  You are not to single out one instruction as stating the law, but must consider the instructions as a whole.

Regardless of any opinion you may have as to what the law is or ought to be, you must follow the law provided by these instructions.

## <u>NO SPECULATION</u>

Your decision must be based upon probabilities, not possibilities.  It may not be based upon speculation or guesswork.

## <u>VERDICT NOT BASED ON SYMPATHY</u>

You should not allow sympathy or prejudice to influence your decision.

You are to look upon the evidence presented and apply the instructions of the court

to the evidence in a completely objective and dispassionate way.

## **TRIAL TRANSCRIPTS**

You will have to make your decision based on what you remember about the evidence.  You will not have a written transcript to read, as it is not currently possible to provide you with an immediate transcript.

## THE PARTIES

The Plaintiff in this case is Austin P. Bond.  Mr. Bond is bringing suit as Special Administrator on behalf of the Estate of Billy Woods who is deceased. Billy Woods (hereinafter referred to as "Billy") was a juvenile housed at the Muskogee County Regional Juvenile Detention Center (hereinafter referred to as the "Juvenile Detention Center") from December 14, 2016 through the time of his death on December 15, 2016.

The Defendant in this case is the Board of County Commissioners of Muskogee County, Oklahoma (hereinafter referred to as the "County").  Under Oklahoma law, the County has a duty to oversee the operation of the Juvenile Detention Center.  The County contracted with the Muskogee County Council of Youth Services (hereinafter referred to as the "MCCOYS") to operate the Juvenile Detention Center.

The County is entitled to the same fair and impartial treatment as an individual defendant would be entitled, regardless of its status as a governmental entity.  You should decide this case as to the County with the same impartiality and fairness as you would use in deciding this case between individual people.

## STATEMENT OF THE CASE

Now I will read you the "statement of the case."  This simply defines the issues to be tried by you in this case.  The allegations, claims, and defenses made herein are not evidence.

On December 15, 2016, while being detained at the Juvenile Detention Center, Billy hanged himself in his room with a bed sheet.  Plaintiff alleges that detention officer Jerrod Lang knew of the substantial risk that Billy would commit suicide and did nothing to prevent it in violation of Billy's constitutional rights.  Plaintiff further alleges that when they discovered Billy, the detention officers on duty – Jerrod Lang, Brandon Miller, and Marietta Winkle – did not obtain medical care for him in violation of Billy's constitutional rights.  Plaintiff alleges that they did not check his pulse, remove the bed sheet from his neck, or perform CPR.  Plaintiff also alleges that Angela Miller and Marietta Winkle did not call 9-1-1 for twenty minutes.

### Plaintiff's claims

 Plaintiff claims that the MCCOYS failed to adequately train and supervise these detention officers and failed to adequately staff the Juvenile Detention Center, and that these failures caused the alleged violations of Billy's

constitutional rights.  Plaintiff claims that the County is liable because it had a policy or custom that resulted in the failure to adequately supervise the MCCOYS.

Plaintiff has the burden of proving his claims.

**<u>Defendant's defenses</u>**

The County contends that the MCCOYS' policies were adequate and did not cause any of the detention officers to act with deliberate indifference towards Billy. The County denies that it was deliberately indifferent with regard to its supervision of the MCCOYS and argues that it was unaware of any problems with the MCCOYS' training or supervision of the detention officers.  The County denies that the alleged violations of Billy's constitutional rights were caused by inadequate staffing.

These are the issues for you to determine.

## BURDEN OF PROOF- GREATER WEIGHT OF THE EVIDENCE

In a civil lawsuit, such as this one, the law provides which party is to prove certain things to you. This is called the "burden of proof."

When I say that a party has the burden of proof on any proposition by the greater weight of the evidence (also called the preponderance of the evidence), or use the expression "if you find," or "if you decide", I mean you must be persuaded, considering all the evidence in the case, that the proposition on which such party has the burden of proof is more probably true than not true.  The greater weight of the evidence does not mean the greater number of witnesses testifying to a fact, but means what seems to you more convincing and more probably true.

A party who seeks to recover on a claim has the burden to prove all the elements of the claim.  In deciding whether a party has met the burden of proof, you are to take into account all the evidence, whether offered by that party or any other party.

## __WHAT IS EVIDENCE__

The evidence from which you are to decide what the facts are consists of:

1.      The sworn testimony of any witness, to include deposition testimony;

2.      The exhibits which have been received into evidence; and

3.      Any stipulations entered into between the parties.

## CONSIDERATION OF THE EVIDENCE

It is your duty to determine the facts, and in so doing you must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony, stipulations, and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence.

Evidence admitted before you for a limited purpose may not be considered for any purpose other than the limited purpose for which it was admitted.

Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

## **HOW TO EVALUATE THE TESTIMONY OF WITNESSES**

You are the sole judges of the "credibility" or believability of each witness and the weight to be given to the witness' testimony. In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.  In making that decision, you may take into account a number of factors including the following:

1.    Was the witness able to see, or hear, or know the things about which that witness testified?

2.    How well was the witness able to recall and describe those things?

3.    What was the witness's manner while testifying?

4.    Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case? You must decide whether the believability of the witness's testimony was affected by his or her personal interest.

5.    How reasonable was the witness's testimony in light of all the evidence in the case?

6.    Was the witness's testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by

other evidence?  In deciding whether or not to believe a witness, keep

in mind that people sometimes forget things.  You need to consider

therefore whether a contradiction is an innocent lapse of memory or an

intentional falsehood, and that may depend on whether the

contradiction concerns an important fact or only a small detail.

7.   Was the witness's testimony essentially the same thing on more than

one occasion?  If so, it may be reason for you to believe or disbelieve

the testimony of that witness.

## **<u>EXPERT WITNESSES</u>**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling.  Expert witnesses state their opinions as to matters in which they are qualified as expert and may also state their reasons for their opinions.

You should judge this testimony in the same way that you judge the testimony of any other witness.  The fact that such a person has given an opinion does not mean that you are required to accept it.  You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves, considering the reasons given for the opinion, the witness' qualifications, and all of the other evidence in the case.

## IMPEACHMENT – INCONSISTENT STATEMENT

A witness may be discredited or "impeached" by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such weight, if any, you think it deserves.

If a witness is shown to have knowingly testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

## DEPOSITION EVIDENCE

During the trial, certain testimony has been presented by way of deposition. A deposition is a procedure where the attorneys may question a witness under oath before a court stenographer prior to trial.  You must consider the deposition testimony of a witness according to the same standards you would use to evaluate the testimony of any witness given live at trial.

## ORAL STATEMENTS OR ADMISSIONS

Evidence as to any oral statements or admissions, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care.  The person making the alleged statement or admission may not have expressed clearly the meaning intended, or the witness testifying to an alleged admission may have misunderstood or may have misquoted what was actually said.

However, when an oral statement or admission made outside of court is proved by reliable evidence, that statement or admission may be treated as trustworthy and should be considered along with all other evidence in the case.

# WHAT IS NOT EVIDENCE

Certain things are not evidence and you may not consider them in deciding what the facts are and in reaching your verdict.  I will list them for you:

1.   Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What is said in opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2.   Questions, statements, and objections by lawyers are not evidence.  If an attorney asks a question that contains an assertion of fact, you may not consider the assertion as evidence of that fact.  Additionally, attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.

3.   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, if you were instructed that some evidence was received for a limited purpose only, you must follow that instruction.

4.   Anything you may have seen or heard when court was not in session is

not evidence.  You are to decide the case solely on the evidence

received at trial.

5.   Also you should not assume from anything I may have said or done that

I have any opinion concerning any of the issues in this case.  Except for

my instructions to you on the law, you should disregard anything I may

have said or done during the trial in arriving at your own decision

concerning the facts.

## 42 U.S.C. § 1983 – CIVIL RIGHTS ACT

Plaintiff brings claims under a federal statute, Title 42 U.S.C. § 1983, which is known as the Civil Rights Act.  This statute provides a remedy including compensation for individuals who have been deprived of their constitutional rights by officials acting under color of state law.  This Act provides in pertinent part as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Plaintiff claims that Juvenile Detention Center officials Jerrod Lang, Angela Miller, Brandon Miller, and Marietta Winkle, while acting under color of state law, violated Billy's rights under the Fourteenth Amendment to the United States Constitution by their deliberate indifference to his serious medical and mental health needs.  Plaintiff alleges that the County is liable based upon principles of "municipal liability" because its policies, practices, or customs proximately caused, or were the moving force behind, the deprivation of Billy's constitutional rights.

Later in these instructions I will explain to you what Plaintiff must demonstrate to prove his claims against the County.

## **"UNDER COLOR OF LAW"**

To prevail on his § 1983 claims, Plaintiff must establish that Billy's federal constitutional rights were violated by an individual acting under "color of state law." You are instructed that the parties have agreed and stipulated that Jerrod Lang, Angela Miller, Brandon Miller, and Marietta Winkle acted under color of state law in relation to Plaintiff's claims in this case.

However, just because it has been stipulated that these individuals acted under color of law, you are not required to also find they violated Billy's federal constitutional rights. Whether an individual acted under color of law and whether an individual violated constitutional rights are two separate issues.

## UNDERLYING CONSTITUTIONAL RIGHTS AT ISSUE:
## <u>FOURTEENTH AMENDMENT</u>

Under the Fourteenth Amendment Due Process Clause, pretrial detainees like Billy are entitled to the same degree of protection against cruel and unusual punishment that applies to convicted inmates under the Eighth Amendment.  The Constitution's prohibition on cruel and unusual punishment imposes a duty on detention officials to provide humane conditions of confinement, including medical care and reasonable safety from serious bodily harm.

A juvenile detainee must rely on detention authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  Deliberate indifference to a detainee's serious medical needs is prohibited by the Constitution, whether the indifference is manifested by detention staff in their response to the inmate's needs or by detention staff in intentionally denying or delaying access to medical care.

Negligence, even that constituting medical malpractice, is not a sufficient bases to impose liability for a constitutional violation.  In order to establish a constitutional claim, the Plaintiff must prove acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

## FOURTEENTH AMENDMENT
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS – <u>ELEMENTS</u>

As stated above, Plaintiff's claims against the County are based upon principles of supervisory or municipal liability.  The County may not be held liable without proof of an underlying constitutional violation by a subordinate official.  In this case, Plaintiff claims that Juvenile Detention Center officers violated the Constitution by deliberate indifference to Billy's serious medical needs.

Specifically, Plaintiff claims that detention officer Jerrod Lang was deliberately indifferent to Billy's substantial risk of suicide.  Plaintiff also claims that when detention officers Jerrod Lang, Brandon Miller, and Marietta Winkle discovered Billy unresponsive in his room, they failed to check his pulse, remove the bed sheet from his neck, or perform CPR.  Plaintiff also alleges that Angela Miller and Marietta Winkle delayed calling 9-1-1 for twenty minutes.

With regard to each of these claims, in order to establish an underlying violation of Billy's constitutional rights, Plaintiff must prove each of the following by a preponderance of the evidence:

*First*: Billy suffered from an objectively serious medical need;

*Second*: One or more of the detention officers at the Juvenile Detention Center were deliberately indifferent to Billy's serious medical need; and

*Third*: The deliberate indifference of that officer or officers caused Billy's injuries.

## SERIOUS MEDICAL NEED DEFINED

A medical condition is sufficiently serious if it is one that has been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would easily recognize the necessity for medical attention. This inquiry is what a layperson would have concluded and does not consider the detention officer's state of mind. You are instructed that suicide is considered a serious medical need.

## DELIBERATE INDIFFERENCE – DETENTION OFFICER

"Deliberate indifference" – requires proof that the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed. The official must have also disregarded that risk by failing to take reasonable measures to abate it. This does not require proof that the official believed that harm would befall a detainee; it is enough that the official acted or failed to act despite his or her knowledge of a serious medical need.

Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence. For instance, the existence of an obvious risk to health or safety may indicate awareness of the risk. Where such a risk is obvious such that a reasonable person would realize it, it may be inferred that the officer did in fact realize it.

With regard to the claim that Jerrod Lang failed to take action to prevent Billy from committing suicide, Plaintiff must prove that Jerrod Lang had actual knowledge of a substantial risk that Billy would commit suicide and, knowing that, failed to take reasonable measures to abate that risk. You may infer actual knowledge of such a risk if you find that such a risk would have been obvious to Jerrod Lang. You are instructed that the general risk that all juvenile detainees in

Billy's position may commit suicide is not sufficient to meet this standard.  Rather, you must find that the risk was both substantial and specific to Billy.

With regard to the claims that Jerrod Lang, Angela Miller, Brandon Miller, and Marietta Winkle failed to provide aid or obtain medical care for Billy when they discovered him hanging in his room, Plaintiff must prove that they had actual knowledge of a substantial risk that Billy would die if they did not help him and, knowing that, failed to do so.  You may infer actual knowledge of such a risk if you find that such a risk would have been obvious to the detention officers.

## <u>CAUSATION</u>

Plaintiff must demonstrate that the failure to meet Billy's objective medical needs caused him to suffer substantial harm.  You are instructed that death is considered substantial harm.  With regard to the claims of failure to provide aid or obtain medical care, if you find by a preponderance of the evidence that Billy was already deceased by the time he was discovered hanging in his room, you must find that the failure to provide aid and/or failure to obtain medical care for him after the discovery did not cause him substantial harm.

## NO "VICARIOUS" LIABILITY

You are instructed that the County cannot be held vicariously liable for its agents' or employees' actions, or in other words, liable solely because its agent or employee may have violated a person's constitutional rights.  In order to find the County liable, you must determine that an official policy or custom of the County itself was directly linked to the alleged unconstitutional act(s).

Thus, if you find that an agent or employee of the County violated Billy's constitutional rights, that is not the end of your inquiry.  Plaintiff must also demonstrate that an official policy or custom of the County itself was the proximate cause, or the moving force behind, the violation of Billy's constitutional rights.

Plaintiff claims that the County, through its subcontractor, the MCCOYS, failed to train and/or supervise the officers at the Juvenile Detention Center and failed to adequately staff the Juvenile Detention Center, and that these failures resulted in the violation of Billy's constitutional rights.  The court will instruct you as to what Plaintiff must prove with regard to these claims below.

## **AGENCY**

To prevail on his claims against the County, Plaintiff must establish, by a preponderance of the evidence, that the MCCOYS was an agent of the County.

The relationship of agency is created from the conduct and/or agreement of the parties showing that one is willing for the other to act for it subject to its control and that the other consents to so act. An agency relationship may arise under such circumstances even when the parties may not have intended to create one. The person who acts for another is called the agent and the other is called the principal.

## THE COUNTY'S CONTRACT WITH THE MCCOYS

You have heard evidence in this case that the County entered into subcontract with a private company, the MCCOYS, to operate and staff the Juvenile Detention Center.  You are instructed that contracting out juvenile facility services to a private entity does not relieve the County of its constitutional duty to provide adequate medical care and protection to those juveniles in custody at the Juvenile Detention Center.

## POLICY, PRACTICE OR CUSTOM – DEFINED

An official policy or custom may take the form of any of the following: (a) a formal policy, (b) an informal custom amounting to a persistent, widespread practice that is so permanent and well-settled as to constitute a custom with the force of law, (c) decisions of employees with final policymaking authority, or (d) the ratification by such final policymakers of the decisions of subordinates to whom authority was delegated subject to those policymakers' review and approval.

Generally, proof of a single isolated incident or random act of a constitutional violation is not sufficient to establish that an unconstitutional policy or custom of the County existed.  Rather, to demonstrate liability based on an un-official practice or custom, Plaintiff usually must show numerous particular instances of similar unconstitutional conduct occurring within a relatively short amount of time.

However, in a narrow range of circumstances, showing a pattern of similar violations is not necessary if a single violation of federal rights is a highly predictable or plainly obvious consequence of a failure to train or supervise employees in specific skills needed to handle recurring situations.

## POLICY OR CUSTOM
## OF FAILURE TO TRAIN AND/OR SUPERVISE

In order to prevail on his claims against the County alleging liability based on a policy, practice, or custom of failing to train and/or failure to supervise its staff at the Juvenile Detention Center, Plaintiff must prove each of the following elements by a preponderance of the evidence:

*First*: An agent, employee, or officer of the County violated Billy's constitutional rights as discussed previously;

*Second*: The agent, employee, or officer who violated Billy's constitutional rights was not adequately trained and/or supervised on a specific issue that was closely related to the alleged violation of Billy's constitutional rights;

*Third*: The need for more or different training and/or supervision was so obvious and the inadequacy so likely to result in a violation of a constitutional right, that the County can reasonably be said to have been deliberately indifferent; and

*Fourth*: The failure to train and/or supervise the officers at the Juvenile Detention Center caused the constitutional violation; that is, the failure to train and/or supervise is so closely related to the deprivation of Billy's rights as to be the moving force that caused the ultimate injury.

## POLICY OR CUSTOM
## OF INADEQUATE STAFFING

In order to prevail on his claims against the County alleging liability based on a policy, practice, or custom of inadequately staffing the Juvenile Detention Center, Plaintiff must prove each of the following elements by a preponderance of the evidence:

*First*: An agent, employee, or officer of the County violated Billy's constitutional rights as discussed previously;

*Second*: The County had an official policy or an un-official practice or custom of inadequate staffing;

*Third*: That the need for more adequate staffing was so obvious to the County and the inadequacy so likely to result in a violation of constitutional rights, that the County can reasonably be said to have been deliberately indifferent to the need for more staffing; and

*Fourth*: Such policy, practice, or custom caused the alleged violations of Billy's constitutional rights.

## DELIBERATE INDIFFERENCE – THE COUNTY

"Deliberate indifference" is the conscious choice to disregard the consequences of one's acts or omissions.  Deliberate indifference requires more than negligence or even gross negligence.  Instead, Plaintiff must prove by a preponderance of the evidence that the County had actual or constructive knowledge (that is, the County knew or should have known) that the particular deficiencies in the MCCOYS' operation of the Juvenile Detention Center were substantially likely to cause violations of the constitutional rights of juvenile detainees, and that the County consciously or deliberately chose to disregard this risk of harm.

## PROXIMATE CAUSE

An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of the act or omission.  If an injury was a direct or a reasonably probable consequence of conduct, it was proximately caused by that conduct.  In other words, if the County's acts or omissions had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

The requisite causal connection is satisfied if the County set in motion a series of events that the County knew or reasonably should have known would cause others to violate Billy's constitutional rights.  In order to recover damages for any injury, Plaintiff must show that such injury would not have occurred without the conduct of the County.  If you find  that Billy's injuries, including his death, would have occurred even in the absence of the County's conduct, you must find that  the County did not proximately cause Billy's injuries.

A proximate cause need not always be the nearest cause either in time or in space.  In addition, there may be more than one proximate cause of an injury or damages.  Many factors or the conduct of two or more people may operate at the same time, either independently or together, to proximately cause an injury.

# **DAMAGES**

If you find that Plaintiff has proved by a preponderance of the evidence one or more of the claims against the County, you must then decide whether to award damages. You should not reach the issue of damages unless you find that the Plaintiff has established liability of the County.

The fact that I am giving you instructions on damages does not mean that you must reach the issue of damages; nor does it mean that I have any opinion as to liability one way or the other.

## COMPENSATORY DAMAGES

If you find that the Plaintiff is entitled to recover from the County, you must award damages which you think will justly and fairly compensate for any injury you believe that was sustained as a direct consequence of the County's conduct. Such damages are called compensatory damages.

You shall award compensatory damages only for those injuries which you find that the Plaintiff has proven by a preponderance of the evidence.  Moreover, you shall award compensatory damages only for those injuries which you find the Plaintiff has proven were the direct result of conduct by the County in violation of Billy's constitutional rights.

A plaintiff who prevails is entitled to compensatory damages for physical injury, bodily pain and suffering, and mental pain and anguish. Thus, compensatory damages may include damages for Billy's physical injury, mental pain and anguish, and bodily pain and suffering.  Placing a dollar value on pain, suffering, and anguish is a difficult task. You must use your best judgment.

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial.

## **VERDICT FORM**

If you found that Plaintiff proved any of his claims by a preponderance of the evidence, find in favor of Plaintiff on the Verdict Form.  If you found that Plaintiff did not prove any of his claims by a preponderance of the evidence, find in favor of Defendant on the Verdict Form.

If you find for Defendant, leave the spaces for damages blank.  The jury foreperson shall then sign and date the Verdict Form.

If you find for Plaintiff, include an amount for actual damages.  The jury foreperson shall then sign and date the Verdict Form.

## A JURY'S DUTY TO DELIBERATE

It is your duty, as jurors, to talk with one another and to deliberate in the jury room.  You should try to reach an agreement if you can.  Each of you must decide the case for yourself, but only after consideration of the evidence with the other members of the jury.  While this is going on, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you are wrong.  But do not give up your honest beliefs solely because the others think differently, or merely to get the case over with.  Your only interest is to determine whether Plaintiff has proven Defendant liable by a preponderance of the evidence.

The decision you reach in the jury room must be unanimous.  You must all agree.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

## SELECTION OF FOREPERSON,
## <u>COMMUNICATION WITH THE JUDGE, VERDICT FORM</u>

When you go to the jury room to begin considering the evidence in this case, I suggest you first select one of the members of the jury to act as your foreperson. This person will help guide your discussions in the jury room.

Once you are there, do not speak to anyone not a member of the jury. This includes the bailiff. Do not speak to the bailiff or anyone else. You should only communicate with me, and you should communicate with me only by a written message. Simply give the written message to the bailiff, and he will bring the message to me. You will have a form in the jury deliberation room for this purpose.

Please understand that when you send me a written message, I am obligated, in most instances, to call in the lawyers to discuss an appropriate response. Therefore, you should remember a couple of things. First, do not put in the message how you stand as to your verdict. For instance, if you are split "4-4" or "6-2" – do not tell me that in your note. Second, because I will need to discuss an appropriate response to your message with the lawyers, you should not expect an immediate response. We will respond as quickly as possible, but you should not stop your deliberations while awaiting a response.

41

Often your message will be a question about the law or the evidence.  Ninety percent of the time, after I have consulted with counsel, the response I give to your question is:  "You have all of the law and evidence necessary for you to reach a verdict."  I'm telling you this now, not to discourage you from sending me a written question, but so that you will not be surprised or annoyed at the answer you ultimately receive.

There are a few messages I might receive from you that I will act on without asking for input from the lawyers.  Usually that message involves jurors who want to go outside to smoke.  If any of you need to go smoke during deliberations, I will give my approval without consulting counsel.  But you must remember that you can only deliberate when all of you are together.  When smokers leave the deliberation room, the remaining jurors must stop deliberating.  Likewise, the smokers cannot deliberate among themselves while they are smoking.

When I send you a written message back, please keep it in this instruction book and bring it back with you when you have reached a verdict.

As I have mentioned, the decision you reach must be unanimous.  You must all agree.  When you have reached a decision, have the foreperson fill in the verdict form, date and sign it.  Then give the bailiff a note to me indicating you have reached a verdict.

The bailiff will come forward to be sworn.

Dated this 17th day of July, 2020.


Ronald A. White
United States District Judge
Eastern District of Oklahoma